2009 ME 18

In re ROBERT S. et al.

Supreme Judicial Court of Maine.

Submitted on Briefs: Jan. 22, 2009.
Decided: Feb. 26, 2009.

Jack Hunt, Esq., Kennebunk, ME, for the mother.

G. Steven Rowe, Attorney General, Nora Sosnoff, Asst. Atty. Gen., Augusta, ME, for the Maine Department of Health and Human Services.

Marsha Lawson, Esq., Kennebunk, ME, Guardian ad litem.

Panel: CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

ALEXANDER, J.

[¶ 1] The mother of Robert and Joshua S. appeals from a judgment entered in the District Court (Springvale, *Foster, J.*) terminating her parental rights to her children after she failed to appear at the docket call for a child protective trial list. The mother argues that her: (1) due process rights to notice and a hearing were violated when the court terminated her parental rights at a non-evidentiary proceeding on grounds of abandonment, and

(2) failure to appear at the proceeding did not constitute "abandonment," within the meaning of 22 M.R.S. § 4055(1)(B)(2)(b)(iii) (2008), for purposes of finding parental unfitness. The State concedes that the court erred in terminating the mother's parental rights without an evidentiary hearing. We vacate the judgment.

## I. CASE HISTORY

[¶ 2] The Department of Health and Human Services filed a petition for a child protection order on January 18, 2006, with respect to Robert, then age nine, and Joshua, then age eight. The Department was awarded temporary custody of the boys on February 17, 2006. On February 28, 2006, the court (*Stavros, J.*) held a summary preliminary hearing, and after taking evidence, vacated the temporary child protection order following the mother's agreement to be bound by the terms of an order that the court (*Foster, J.*) subsequently issued.

[¶ 3] The Department filed a request for preliminary child protection order on May 1, 2006. The court (*Janelle, J.*) granted the petition that day, again giving temporary custody of the boys to the Department. The court (*Foster, J.*) held a hearing on the Department's petition for child protection order on May 16, 2006, which was to continue on May 26. On May 26, the mother's attorney filed a motion to withdraw at the mother's request. The court granted the motion, but informed the mother that this was the second time the court had replaced counsel at her request and that the court would not delay the proceedings for the removal of counsel again. After a further hearing, the court entered a finding of jeopardy with respect to the mother on September 20, 2006.

[¶ 4] The Department filed a petition for termination of the mother's and the father's parental rights on July 26, 2007. The petition alleged that the children were at risk of serious harm, specifically emotional abuse, due to the mother's significant mental health issues and the father's abandonment of the children. Hearing on the petition was set for August 2007, but was subsequently reset "to make provisions for a contested hearing."

[¶ 5] In late April 2008, the court sent a general "notice of trial, child protection matters," to the mother's attorney. The notice stated that the hearing on the petition for termination of parental rights, along with eleven other non-related cases, was scheduled for a five-day trailing docket to be held May 15, 16, 20, 21, and 23, 2008. The notice warned that the case could be called for trial on any of the dates listed, unless a request for protection was filed. Finally, the notice stated that:

All parties and counsel on all cases listed shall appear in court on May 14, 2008 and be prepared to remain until noon on that date. On that date, the Court will default any party that fails to appear, place any agreements on the record, and finalize the trial schedule. Parties and counsel shall make every effort to participate on that date; if they are unable to do so, they must file a Request for Protection as indicated above outlining the compelling reason that prevents their attendance.

The same notice was apparently sent to the father's attorney.

[¶ 6] On May 14, 2008, the mother's attorney appeared at the docket call, but the mother did not appear. The father appeared personally with his attorney. The Department requested termination of the mother's parental rights based on abandonment, arguing that she had not engaged in services, had not contacted the

Department for six months, and had not appeared at the docket call. The Department did not request termination of the father's parental rights at that time, instead requesting a three-month continuance.

[¶ 7] Addressing the court first, the father joined the Department's request for a continuance. The court granted the father a three-month continuance to engage in reunification efforts in light of the Department's request.

[¶ 8] The mother's attorney then addressed the court. He advised the court that, despite the mother's non-appearance on that day, she had actively participated in the case and had visited her children regularly. The attorney acknowledged that the mother had not contacted him for several months and had failed to keep him apprised of her current contact information. Her attorney further stated that, upon realizing that he did not have current contact information for the mother, he had made several unsuccessful attempts to locate her through the Department and other sources. Because of these contact difficulties, the attorney believed that the mother had not received notice of the docket call and trial dates. In light of the three-month continuance granted to the father, the mother's attorney moved for a three-month continuance to allow him additional time to contact the mother.

[¶ 9] The court denied the mother's motion for a continuance. The court stated that the mother's "failure to appear," and to keep her attorney apprised of her address and telephone number, threaten to further delay this proceeding that has been pending since August 2007." At the conclusion of the docket call proceeding, over the objection by the mother's counsel, and without conducting an evidentiary hearing, the court stated it would enter an order terminating the mother's parental rights with respect to the boys "based upon abandonment." In a written order issued that day, the court stated that, "[b]ased upon [the mother's] failure to appear," it found by clear and convincing evidence that termination is in the children's best interest and that the mother had abandoned the children.

[¶ 10] The mother filed a motion for relief from judgment pursuant to M.R. Civ. P. 60(b) on grounds of excusable neglect, asserting that she had not received notice of the May 14, 2008, docket call. She stated that she had last given her contact information to her attorney in February 2008, but had left the shelter where she had been living. She asserted that she did not inform her attorney of her whereabouts at that time because she was in hiding, fearing retaliation by individuals against whom she had informed in criminal matters. The court denied the motion for relief from judgment.

[¶ 11] The mother appeals from the judgment terminating her parental rights and from the denial of her motion for relief from judgment.

## II. LEGAL ANALYSIS

[¶ 12] We review questions of law, including alleged constitutional violations and statutory interpretation, de novo. *See Bangs v. Town of Wells,* 2000 ME 186, ¶ 9, 760 A.2d 632, 635. We review decisions on a motion for relief from judgment for an abuse of discretion. *Merrifield v. Hadlock,* 2009 ME 1, ¶ 5, 961 A.2d 1107, 1108.

[¶ 13] "The Due Process Clause of the Fourteenth Amendment of the United States Constitution and article I, section 6–A of the Maine Constitution protect a parent's fundamental and important right to raise one's children." *In re Matthew W.,* 2006 ME 67, ¶ 7, 903 A.2d 333,

336; *see also In re Christmas C.*, 1998 ME 258, ¶ 9, 721 A.2d 629, 631 (stating that the Maine and United States Constitutions "are declarative of identical concepts of due process"). A parent's right to procedural due process requires "an opportunity to be heard upon such notice and proceedings as are adequate to safeguard the right." *In re Christmas C.*, 1998 ME 258, ¶ 9, 721 A.2d at 631.

 [¶ 14] Specifically, "[a]pplied to hearing processes where significant rights are at stake, due process requires: notice of the issues, an opportunity to be heard, the right to introduce evidence and present witnesses, the right to respond to claims and evidence, and an impartial factfinder." *In re Chelsea C.*, 2005 ME 105, ¶ 16, 884 A.2d 97, 102; *see also In re Kristy Y.*, 2000 ME 98, ¶ 7, 752 A.2d 166, 169; *see generally Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *In re Matthew W.*, 2006 ME 67, ¶ 8, 903 A.2d at 336 ("Before the State can terminate parental rights, the dictates of due process require the requisite findings to be made by clear and convincing evidence, after notice and a hearing.").

[¶ 15] Recognizing these rights, the termination of parental rights statute requires an evidentiary hearing before parental rights are terminated. Pursuant to 22 M.R.S. § 4054 (2008), the court must hold a hearing prior to making a termination order. Unless a parent consents to termination of his or her rights, 22 M.R.S. § 4055(1)(B)(1) (2008), the court may order a termination of parental rights only after finding, by clear and convincing evidence, at least one of the four bases of parental unfitness, one of which is abandonment of the child, as described in 22 M.R.S. § 4055(1)(B)(2)(b) (2008), and that termination is in the children's best interests, 22 M.R.S. § 4055(1)(B)(2)(a) (2008). *See* M.R. Civ. P. 52(a) ("[I]n every action for termination of parental rights, the court shall make findings of fact and state its conclusions of law thereon...."); *see also In re Mark M.*, 581 A.2d 807, 809 (Me. 1990) ("We review the record to determine whether it contains adequate grounds to support, by clear and convincing evidence, the court's finding of abandonment."). A court cannot make factual findings based on clear and convincing evidence, and thus cannot comply with statutory requirements, unless it first holds an evidentiary hearing.

 [¶ 16] Accordingly, both the statute and due process principles require that, on the facts of this case, the court hold an evidentiary hearing before terminating the mother's parental rights.[1] The

1. We point out that due process does not require that a parent be personally present at a termination hearing before his or her parental rights may be terminated, based on one or more of the grounds of parental unfitness described in 22 M.R.S. § 4055(1)(B)(2)(b) (2008), as long as notice of the hearing was given in a manner calculated to give actual notice and the parent had an *opportunity* to be heard. *See In re Randy Scott B.*, 511 A.2d 450, 452–54 (Me.1986) (holding that in applying the three-part test from *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), an incarcerated parent's due process rights were not violated when a hearing to terminate his parental rights was held in his absence where the parent was represented by counsel at the hearing and testified via deposition). In fact, a parent's "[f]ailure to respond to notice of a child protective proceeding" is one means by which a parent may be deemed to have abandoned his or her child, which, in turn, is one of the four grounds for finding parental unfitness in a termination proceeding. *See* 22 M.R.S. §§ 4002(1–A), 4055(1)(B)(2)(b)(iii) (2008); *see also* 22 M.R.S. § 4002(3) (2008) (defining "child protection proceeding"). However, a court may only enter a finding of abandonment after an evidentiary hearing that developed a record demonstrating abandonment

risk of an erroneous deprivation of a parent's right to parent his or her children is far too great to permit courts to terminate parental rights without such a hearing. *See Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *In re Alexander D.*, 1998 ME 207, ¶ 13, 716 A.2d 222, 226.[2]

[¶ 17] In this case, the court terminated the mother's parental rights at the docket call, finding, on the merits, that the mother was an unfit parent on grounds of abandonment. The court made this "finding" in a non-evidentiary hearing that, over her lawyer's objection, denied the mother the opportunity to introduce evidence, present witnesses or respond to any evidence the State may have offered. In doing so, the court violated the mother's constitutional right to be heard and failed to comply with the procedural requirements of 22 M.R.S. §§ 4054, 4055(1)(B) (2008).[3]

[¶ 18] Thus, the court erred when it terminated the mother's parental rights based on "findings" derived from a non-evidentiary proceeding, and erred when it denied the mother's motion for relief from judgment.

The entry is:

Judgment vacated. Remanded for an evidentiary hearing on the State's termination petition.

by clear and convincing evidence. *See, e.g., In re Mark M.*, 581 A.2d 807, 809 (Me.1990). When abandonment is based upon a parent's failure to respond to notice of a child protective hearing, the record must also demonstrate the efforts made to provide notice.

2. We note in this case that the goal of achieving permanency for the children was not furthered by terminating the mother's parental rights at the docket call. The court had already granted the father a three-month continuance to engage in reunification efforts, so the Department was not able under any circumstances to pursue permanent placements for the children during that period.

3. The court's procedure of holding a docket call to manage caseloads and schedule termination hearings on a subsequent trailing docket is proper and is not, in and of itself, violative of a parent's due process right to be heard.