MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2016 ME 162
Docket:        Yor-16-99
Submitted
 On Briefs:    September 29, 2016
Decided:       November 8, 2016

Panel:         SAUFLEY, C.J., and ALEXANDER, <u>MEAD</u>, GORMAN, JABAR, and HUMPHREY, JJ.

## IN RE CAMERON Z. et al.

MEAD, J.

[¶1]   The mother and father of Cameron Z., Calvin Z., Cole Z., and Lawrence Z. appeal from a judgment of the District Court (Biddeford, *Foster, J.*) terminating their parental rights to the children pursuant to 22 M.R.S. § 4055(1)(B) (2015).[1]   Both parents contend that the evidence was insufficient to support the court's findings, by clear and convincing evidence, of at least one ground of unfitness as to each parent, and that termination of their parental rights was in the children's best interest.  *See id.*  The father additionally contends that the court erred in admitting hearsay statements made by one of the children, and that the trial judge should have granted his motion to recuse.[2]  We affirm the judgment.

---

[1]  The mother consented to a termination of her parental rights to Lawrence; she does not challenge that part of the court's judgment.

[2]  We have fully considered the father's arguments on those issues.  We discern no error, and we conclude that they do not warrant further discussion.

## I. BACKGROUND

A.    Procedural History

[¶2]   On February 6, 2014, the Department of Health and Human Services filed a petition for a child protection order and a request for a preliminary order concerning Lawrence, who was at that point unnamed and still in the hospital after being born drug-affected on January 21. *See* 22 M.R.S. §§ 4032, 4034(1) (2015).[3]   The Department alleged that the baby had effectively been abandoned at the hospital by the parents, and that the father's six-year-old son from another relationship, D.G., who lived in the parents' home, had recently received unexplained inflicted injuries.  The court granted a preliminary order the same day giving custody of Lawrence to the Department.  The parents later failed to appear for the summary preliminary hearing.  Also on February 6, the Department petitioned for a child protection order concerning Cameron, Calvin, and Cole; it did not request a preliminary order and the children remained in their home pursuant to a safety plan developed by the Department.

[¶3]  On May 15, the court entered a jeopardy order as to the mother by agreement concerning all four children; the father did not appear for the

---

[3]  Title 22 M.R.S. § 4034(1) has since been amended, but not in any way that affects this appeal. P.L. 2015, ch. 501, § 9 (effective July 29, 2016).

hearing. *See* 22 M.R.S. § 4035 (2015). The court found jeopardy based on the mother's substance abuse issues, her inadequate supervision of the children, and her failure to appreciate the risk posed to them by the father. Cameron, Calvin, and Cole were placed in the mother's custody subject to several conditions, one of which was that she "not permit, tolerate or facilitate contact between the father . . . and any or all of the children without the written approval of the Department." Lawrence remained in the Department's custody at his foster home.

[¶4] Based on the father's representation that he was returning to Maine from Florida to contest a jeopardy finding, the court reset his jeopardy hearing for May 30. On that date the father again did not appear; unbeknownst to the court, he had been arrested a few hours before the scheduled hearing and was in the Cumberland County Jail. The court held a testimonial hearing in his absence at which he was represented by counsel, following which it made detailed findings and entered a jeopardy order against the father as to all of the children, finding that he (1) failed to protect D.G. from assault in the home in that, "at a minimum he was aware of the physical violence, did nothing to protect the child, and took active steps to conceal it from others"; (2) failed to protect Lawrence from the mother's drug

use during her pregnancy, resulting in the baby being born drug-affected; and (3) abandoned the children by leaving the state, having no contact with them, and "providing no assistance, financial or otherwise." We affirmed the jeopardy order when the father appealed. *In re D.G.*, Mem 15-36 (June 9, 2015).

[¶5] On the day of the father's rescheduled jeopardy hearing, the Department filed a petition to terminate the parents' rights to Lawrence. *See* 22 M.R.S. § 4052 (2015). The mother consented to the termination of her parental rights; the father did not.

[¶6] On October 10, the Department requested a preliminary protection order concerning Cameron, Calvin, and Cole based, in part, on an allegation that the father had been having unsupervised contact with the children in violation of the jeopardy order that the mother agreed to. The court issued a preliminary order granting custody of the children to the Department. The parents appeared at the summary preliminary hearing and contested the preliminary order. The court heard evidence that two Assistant Attorneys General had seen the father in a car with Cameron, Calvin, and Cole. The court made a finding that it had "no confidence in the parents'

representations or promises," and ordered that the preliminary order remain in effect.

[¶7]  On April 10, 2015, the Department filed a petition to terminate the parents' rights to Cameron, Calvin, and Cole.  A hearing held over three days in November 2015 resulted in the court issuing a detailed twenty-page order terminating both parents' rights to Cameron, Calvin, Cole, and Lawrence.  The father left the courtroom on the afternoon of the first day of the hearing and, without explanation, never returned; he continued to be represented by counsel throughout.  Both parents appealed.

B.    Facts Found in the Termination Order

[¶8]   The court found the following facts by clear and convincing evidence in its order terminating parental rights; the findings are supported by evidence in the record.  *See In re K.M.*, 2015 ME 79, ¶¶ 9, 11, 118 A.3d 812.

1.  Father

[¶9]  In 2009, five years before this case began, the court (*Douglas, J.*) issued a jeopardy order as to the father concerning Cameron[4] in which the court found, reminiscent of the jeopardy order in this case, that the father had failed to protect Cameron from the mother's substance abuse, resulting in the

---

[4]  The jeopardy order notes that, as in the present case, the father initially appeared for the hearing and then left.

child being born drug-affected. The court also found that the father had inflicted domestic violence on the mother, and noted his "lengthy history of criminal conduct, including domestic violence against his former wife, as well as convictions for theft, burglary, and [] disorderly conduct. [He] has spent a good part of his adult life on probation or in jail." When reunification efforts with the mother were successful, the child protection case was dismissed and replaced with a parental rights and responsibilities order barring the father from having unsupervised contact with Cameron.

[¶10] In January 2014, the current child protection case began when six-year-old D.G. came to school with unexplained bruises. Dr. Lawrence Ricci, co-director of the Spurwink Child Abuse Program, opined that the injuries were inflicted. The mother was then pregnant with Lawrence, who, like his brother, was born drug-affected; the father did not visit Lawrence at the hospital. In January 2015, the Department scheduled a supervised visit with Lawrence for the father; he confirmed the date and time with the visit supervisor but did not attend. The father also did not follow through with the opportunity for approved visits with the other children after last seeing them in September 2014.

[¶11]  The court further found that throughout the child protection case the father maintained a relationship with the mother, although he knew that his actions affected the likelihood of the mother keeping custody of the children.  The children were aware of domestic violence that he perpetrated occurring in the home.  In February 2015 there was a heroin "drug bust" at the mother's apartment where the father was present; the father's brother-in-law was arrested.  The court summarized the factors on which it based its finding of the father's parental unfitness:

> There is no evidence that he has engaged in any services designed to address the jeopardy identified by this Court in its order of June 5, 2014.  He actually left the trial in this matter midway through and did not return.  His actions continue to constitute abandonment of his children.  His continued refusal to separate from [the mother] and provide her the space and opportunity to address her own issues has seriously impeded her ability to alleviate jeopardy and regain custody of her sons.  There is no evidence that any of the children has a firm, positive connection to their father.

2. Mother

[¶12]  The mother has a long-standing substance abuse problem, which she acknowledged in the 2009 and 2014 jeopardy orders, that she has made some progress in addressing.  The court found that "[i]t is likely that she will continue to have some success *if* she can remain in opiate replacement therapy."

[¶13]  She has done less well, and often failed, in taking advantage of the many services offered to her by the Department through numerous providers to address a wide range of other issues affecting potential reunification. Those services included opportunities for supervised visitation with the children; case management; psychiatric treatment; medication management; individual counseling concerning her mental health issues; assistance with parenting issues; and help with the issue of domestic violence.

[¶14]  A central concern for the court—a concern well-supported by the record—was the mother's ongoing clandestine relationship with the father:

> [The mother] still does not accept that [the father] presents a risk of harm to her children and has not been willing or able to sever her ties with him. . . . It was imperative in this matter that [the mother] demonstrate a relatively long-term, reliable history of separation from [the father]. . . . In light of [the] history [of their relationship], as well as [the mother's] failure to be honest on any number of issues, the representation that she has been separated from [the father] for several months, carries virtually no weight with the Court.

3. Children

[¶15]  The court found that the children have significant difficulties caused, at least in part, by their parents and their parents' relationship; however, Cameron, Cole, and particularly Lawrence are doing well in their current placements.  Although Calvin is struggling, the court found that he

cannot make progress without the chance to become established in a permanent home. The children have been exposed to domestic violence when living with their parents. Additionally, the children have sometimes indicated that they were not to tell the truth to authorities about what went on in the home and who was there, and have been labeled as liars by the mother when they have made such reports.

## II. DISCUSSION

[¶16] The termination of parental rights is governed by statute.[5] When a court enters a judgment terminating a parent's rights to a child,

---

[5] The governing statute provides:

**1. Grounds.** The court may order termination of parental rights if:

. . . .

**B.** Either:

**(1)** The parent consents to the termination. Consent shall be written and voluntarily and knowingly executed in court before a judge. The judge shall explain the effects of a termination order; or

**(2)** The court finds, based on clear and convincing evidence, that:

**(a)** Termination is in the best interest of the child; and

**(b)** Either:

**(i)** The parent is unwilling or unable to protect the child from jeopardy and these circumstances are unlikely to change within a time which is reasonably calculated to meet the child's needs;

> [w]e review the court's factual findings for clear error and its ultimate conclusion regarding the best interest of the child for an abuse of discretion, viewing the facts, and the weight to be given them, through the trial court's lens. Evidence is sufficient to affirm an order terminating parental rights when a review of the entire record demonstrates that the trial court rationally could have found clear and convincing evidence in that record to support the necessary factual findings as to the bases for termination.

*In re R.M.*, 2015 ME 38, ¶ 7, 114 A.3d 212 (citations and quotation marks omitted).

[¶17] Here, the court's factual findings recited *supra* have support in the record and are not clearly erroneous. *See State v. Lowden*, 2014 ME 142, ¶ 8, 106 A.3d 1134. As to the mother, the court found that she had the opportunity to utilize numerous services offered by the Department in an effort to reunify with the children; her cooperation with and participation in those services was insufficient, and she was unwilling to end her relationship with the father, which the court found to be a compelling factor. As to the

---

**(ii)** The parent has been unwilling or unable to take responsibility for the child within a time which is reasonably calculated to meet the child's needs;

**(iii)** The child has been abandoned; or

**(iv)** The parent has failed to make a good faith effort to rehabilitate and reunify with the child pursuant to section 4041.

22 M.R.S. § 4055(1)(B) (2015).

father, the court found "no evidence he ha[d] engaged in any services designed to address the jeopardy identified by this Court," and that he had abandoned the children, which is sufficient, standing alone, to establish unfitness. 22 M.R.S. § 4055(1)(B)(2)(b)(iii). The court also properly considered "the centrality of permanency in child protective proceedings," *In re Thomas H.*, 2005 ME 123, ¶ 25, 889 A.2d 297, and had in evidence the report and testimony of the guardian ad litem supporting the petition for termination.

[¶18] From those facts and legal authorities, the court could rationally find by clear and convincing evidence that both parents were unwilling or unable to protect the children from jeopardy or to take responsibility for them; that neither of those circumstances is likely to change within a time reasonably calculated to meet the children's needs; that the father abandoned the children; and that termination of the parents' rights is in the children's best interest. *See* 22 M.R.S. § 4055(1)(B)(2). Accordingly, the court did not err or abuse its discretion in entering a judgment terminating the parents' rights.

The entry is:

Judgment affirmed.

12

**On the briefs:**

Amy McNally, Esq., Woodman Edmands Danylik Austin Smith & Jacques, P.A., Biddeford, for appellant mother

Philip Notis, Esq., Portland, for appellant father

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Biddeford District Court docket number PC-2014-07
FOR CLERK REFERENCE ONLY