MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2017 ME 159
Docket:        Wal-17-65
Submitted
  On Briefs:   June 29, 2017
Decided:       July 18, 2017
Corrected:     July 25, 2017

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

IN RE ZOEY H.

GORMAN, J.

[¶1]  The mother of Zoey H. appeals from a judgment of the District Court (Belfast, *Worth, J.*) terminating her parental rights to her child pursuant to 22 M.R.S. § 4055(1)(A)(1) and (B)(2)(a), (b)(i)-(iv) (2016).[1]  She argues that she was deprived of due process because the court terminated her parental rights after affording her insufficient notice of the termination hearing and because the court placed undue weight on the earlier termination of her rights to another child.  The mother also asserts that the court's findings are insufficient as a matter of law because the court adopted the proposed findings of the Department of Health and Human Services without material

---

[1]  The father's parental rights to the child were terminated in the same order.  He is not a party to this appeal, however.

alteration.[2]  We will address each of the mother's contentions below but, because we conclude that the mother received due process and because the evidence supports the court's findings and discretionary determination, we affirm the judgment.

[¶2]  The court determined that the mother is unwilling or unable to protect the child from jeopardy and these circumstances are unlikely to change within a time that is reasonably calculated to meet the child's needs, that she has been unwilling or unable to take responsibility for the child within a time that is reasonably calculated to meet the child's needs, and that she has failed to make a good faith effort to rehabilitate and reunify with the child pursuant to 22 M.R.S. §  4041 (2016).  *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii), (iv).  It also determined that the mother has abandoned the child.  *See* 22 M.R.S. § 4055(1)(B)(2)(b)(iii).  These determinations are unquestionably supported by the court's findings of fact, which are in turn supported by competent record evidence.

---

[2]  Additionally, the mother contends that the court's failure to hold a timely permanency planning hearing after ordering the Department to cease reunification efforts, *see* 22 M.R.S. § 4036(1)(G-2) (2016), prejudiced her.  Given the mother's pattern of nonparticipation in reunification efforts before the cease reunification order and her nonparticipation in court proceedings and reunification efforts after the order, we conclude that it is highly probable that this failure did not affect the outcome of this case and constituted harmless error.  *See In re Scott S.*, 2001 ME 114, ¶ 30, 775 A.2d 1144.

3

[¶3] Among other findings, the court found, by clear and convincing evidence, that the mother did not have any contact with the Department's caseworker after the jeopardy hearing, "refused to meet with the caseworker[,] . . . ignored the Department's attempts to develop a plan to address reunification," and, at the time of the termination hearing, had not visited with the child in over six months. The court further found that the mother "[does] not believe that [she] need[s] to change and [is] unwilling to take the necessary steps to alleviate the jeopardy that continues to exist." In discussing the permanency plan for the child, the court noted that both the foster family and a paternal family member are willing to adopt her and her older sister.[3] Given this evidence, the court appropriately determined, by clear and convincing evidence, that the State has demonstrated all four grounds of parental unfitness and that termination is in the child's best interest. *See In re Robert S.*, 2009 ME 18, ¶ 15, 966 A.2d 894.

[¶4] Turning to the mother's other challenges on appeal, we find her assertions that the court violated her right to due process by failing to provide notice of the hearing and by "utiliz[ing]" the fact that she had recently had her

---

[3] As we recently stated, "permanency planning for a child in foster care and the best interest determination to be made in a termination proceeding, are distinct from the question of *who* should adopt the child, which is addressed in an adoption proceeding." *In re Kenneth S.*, 2017 ME 45, ¶ 6, 157 A.3d 244 (emphasis in original) (citations omitted).

parental rights to another child terminated wholly unpersuasive. *See* U.S. Const. amend. XIV, § 1; Me. Const. art. I, § 6-A; *In re Robert S.*, 2009 ME 18, ¶¶ 13-14, 966 A.2d 894. With regard to the issue of notice, the record shows that the mother was served in-hand with the petition for termination of parental rights in October of 2016 and that notice of the termination hearing was issued in December of 2016 for a hearing to be held in January of 2017.[4] The record also demonstrates multiple attempts by the Department and court-appointed counsel to contact the mother.[5] Despite notice and although her attorney was present and participated, the mother did not attend the hearing on the Department's termination petition.

[¶5] There is also no indication that the court placed undue weight on the involuntary termination of the mother's parental rights to her older child in reaching its conclusion regarding this child. *See In re Heather C.*, 2000 ME 99, ¶¶ 30-32, 751 A.2d 448. Contrary to the mother's assertions, the record shows that the earlier termination order was one of several factors properly

---

[4] The mother points to a judicial review and permanency planning order dated December 12, 2016 (*Sparaco, J.*), which indicated that another judicial review hearing would be held in May of 2017, to support her contention that the court's communications about the date of the termination hearing were "ambiguous." Contrary to her contention, that same order indicated that the termination hearing would be held in January.

[5] At the termination hearing, the mother's attorney reported to the court his efforts to ensure that his client was aware of the hearing, including resending a copy of the trial notice and leaving a message on her voicemail.

considered by the court along with ample evidence that the mother has abandoned the child.[6]    The court's termination judgment included the following language from the jeopardy order:

> [The child] is placed in circumstances of jeopardy to her health and welfare by her mother . . . due to serious abuse or neglect as evidenced by the threat of serious harm including serious injury and/or serious mental or emotional injury or impairment, and the deprivation of adequate shelter, supervision, and care, due to exposure to ongoing domestic violence in the home, history of unstable mental health, and ongoing substance abuse, and inability to provide a safe, stable and sanitary home for the child.

At the time of the jeopardy proceeding that resulted in this order, the child was not even four months old and had never lived with her parents.  The court was able to make these jeopardy findings, however, because the child was conceived and born while her parents were involved in a child protection proceeding regarding their older child and the father's three other children.  As a result of the parents' neglect or abuse of the older children, the court (*Raimondi, J.*) removed the child from her parents' custody almost immediately after birth.  In short, the court's consideration of the earlier termination of the mother's parental rights to her older child was appropriate, and the mother's right to due process was more than adequately protected.

---

[6]  Although the mother urges us to consider the constitutionality of 22 M.R.S. § 4002(1-B) (2016), we decline to revisit this settled point of law.  *See generally In re Heather C.*, 2000 ME 99, 751 A.2d 448.

[¶6]  Finally, we reject the mother's contentions that the court's order constitutes a "verbatim adoption" of the Department's proposed findings and that the findings contained therein are therefore insufficient as a matter of law.  Although a verbatim adoption of the language of a proposed order or an adoption absent material change is disfavored because it would "suggest[] that the court has not applied its independent judgment in making its findings and conclusions," courts may properly request and consider proposed orders from parties in crafting an order.  *In re Marpheen C.*, 2002 ME 170, ¶ 7, 812 A.2d 972.  Here, at the close of the termination hearing, the court stated its findings and conclusions of law on the record[7] and requested that the Department submit a proposed order reflecting its judgment.  The court then made changes to the text submitted by the Department.  It is therefore "evident that the . . . judgment is the result of the application of independent judicial thought to the process of making fact-findings and conclusions." *Id.*

The entry is:

Judgment affirmed.

---

[7]  Specifically, the court took note of prior termination proceedings involving the mother and then stated, "[T]he Department has shown that the mom . . . [has] abandoned [the child]," and, further, that the mother did not take advantage of visits with the child, participate in family team meetings, complete the work necessary to reunify with the child, or appear at the termination hearing despite proper notice.

---

Ezra A.R. Willey, Esq., Willey Law Offices, Bangor, for appellant mother

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Belfast District Court docket number PC-2016-4
FOR CLERK REFERENCE ONLY