MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2017 ME 164
Docket:        Ken-17-72
Submitted
  On Briefs:   June 29, 2017
Decided:       July 20, 2017

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

# IN RE RYDER C.

HJELM, J.

[¶1]  The mother and father of Ryder C. appeal from a judgment of the District Court (Augusta, *Nale, J.*) terminating their parental rights pursuant to 22 M.R.S. § 4055(1)(A)(1)(a), (1)(B)(2)(a), (1)(B)(2)(b)(i), and (1-A)(E) (2016).  Both parents challenge the court's findings that they are unfit and its conclusion that termination of their parental rights is in the child's best interest.  Because the evidence supports the court's findings and the court did not abuse its discretion or otherwise err in making its best interest determination, we affirm the judgment.  *See In re Cameron B.*, 2017 ME 18, ¶¶ 10-11, 154 A.3d 1199.

[¶2]  Based on evidence presented during a three-day hearing held in December 2016 and January 2017, the court found by clear and convincing evidence, both directly and based on a statutory presumption of unfitness, *see*

2

22 M.R.S. § 4055(1-A)(E),[1] that the parents are unable to protect the child from jeopardy and that those circumstances are unlikely to change within a time calculated to meet the child's needs, *see id.* § 4055(1)(B)(2)(b)(i). *See In re Robert S.*, 2009 ME 18, ¶ 15, 966 A.2d 894. The court also determined that termination of the parental rights of the mother and father is in the best interest of the child, who was three years old at the time of the hearing. *See id.*; 22 M.R.S. § 4055(1)(B)(2)(a).

[¶3] In reaching those determinations, the court made the following factual findings, which are supported by the record. *See In re Mya E.*, 2017 ME 93, ¶ 2, --- A.3d ---.

[¶4] The child was born at thirty-two weeks with serious medical and developmental disabilities that still profoundly affect him. The child has been under the care of a cardiologist, an orthopedic surgeon, a geneticist, an eye doctor, a neurologist, and an ear, nose, and throat physician, in addition to his pediatrician. Due to his medical needs, the child's survival depends on "consistent and unwavering attention" and care from his caregivers.

---

[1] Title 22 M.R.S. § 4055(1-A)(E) (2016) provides:

> The court may presume that the parent is unwilling or unable to protect the child from jeopardy and these circumstances are unlikely to change within a time which is reasonably calculated to meet the child's needs if . . . [t]he child has been placed in the legal custody or care of the department for at least 9 months, and the parents have been offered or received services to correct the situation but have refused or have made no significant effort to correct the situation.

[¶5] Additionally, while he was in his parents' care, the child suffered from "significant environmental failure to thrive." He was not adequately fed and, during his second year of life, essentially gained no weight. The child's medical care was compromised because his parents caused him to miss dozens of scheduled medical appointments. The court accepted the assessment of a physician who testified that this was "one of the most severe cases of parental neglect" he had seen in thirty years of practice. During that time, the mother also abused her prescription medications.

[¶6] After the child had been placed in foster care, which occurred in August 2015, he was returned to his mother's custody for a trial placement. As the court found, that effort was "a mistake." During the six weeks when the child was with her in the spring of 2016, the mother did not take him to "crucial scheduled appointments"; she did not adequately feed him, causing him to lose weight; and she deliberately overstated to the child's medical provider how much food she was giving him.

[¶7] The father suffers from mental health issues, but he has refused to participate in individual counseling as required by his reunification plan and has failed to submit to drug screens as requested. He does not understand why the child was placed in the care of the Department of Health and Human

4

Services.   The court agreed with the father's own assessment that he is presently unable to care for the child.

[¶8]  Since being placed in foster care, the child is in "reasonably good health," he has consistently gained weight, and his physiological development has been "spectacular."  His foster parent meets his significant needs, such as providing physical and occupational therapy and taking the child to his medical appointments.  Both parents, on the other hand, have missed many of the child's appointments, and the father has not appeared for most scheduled visits.  The court found that the mother's excuses for the missed appointments were not credible.  Although the parents love the child, both have their own "incredible needs," and neither is able to manage the demands of the child's care "or even recognize what those needs are."

[¶9]  The court's factual findings explain the serious needs of the child, the parents' failure to make a significant effort to improve their caregiving abilities while the child has been in the Department's custody, and their inability to assume responsibility of caring for the child.  The findings of parental unfitness were supported by the evidence, and the court did not abuse its discretion or err in determining that termination of the parental

rights of the mother and father will serve the child's best interest. *See In re Cameron Z.*, 2016 ME 162, ¶¶ 17-18, 150 A.3d 805.

The entry is:

Judgment affirmed.

---

Elyse M. Apantaku, Esq., Schneider & Brewer, Waterville, for appellant mother

Thomas W. Bell, Esq., The Law Office of Thomas W. Bell, Topsham, for appellant father

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Augusta District Court docket number PC-2015-3
FOR CLERK REFERENCE ONLY