MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2017 ME 228
Docket:        Yor-17-280
Submitted
  On Briefs:   November 29, 2017
Decided:       December 12, 2017

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, JABAR, HJELM, and HUMPHREY, JJ.

IN RE ARTURO G.

SAUFLEY, C.J.

[¶1]  The parents of Arturo G. appeal from a judgment of the District Court (Biddeford, *Foster, J.*) terminating their parental rights to Arturo pursuant to 22 M.R.S. § 4055(1)(A)(1)(a) and (B)(2)(a), (b)(i), (ii) (2016) and, with respect to the father, § 4055(1)(B)(2)(b)(iv).  Arturo is two and a half years old and, as a result of his parents' drug addictions, has lived with four different care providers in his short life.  The father challenges the sufficiency of the evidence to support the court's finding of unfitness.  He also argues that he was deprived of due process when the court denied his motion to continue a hearing on the ground that he was experiencing withdrawal from Suboxone. The mother argues that the court erroneously admitted hearsay evidence in the form of drug test results.  The evidence supports the court's factual findings; the father received due process; and the court did not abuse its discretion in admitting evidence of the mother's drug test results.  We affirm the judgment.

## I. BACKGROUND

[¶2]  On April 23, 2015, the Department of Health and Human Services filed a petition for a child protection order concerning the child, who at that time was only two weeks old.  The Department based its petition on the parents' significant history of substance abuse and incarceration and on a prior order terminating the mother's parental rights to her older daughter.  On June 5, 2015, the court entered a jeopardy order with respect to the father, to which he agreed.  Pursuant to that jeopardy order, the father was required to submit to random testing for drugs and alcohol by both hair and urine, and the Department was required to facilitate the father's substance abuse counseling.

[¶3]  On  July 17, 2015, the court entered a jeopardy order as to the mother, to which she agreed.  Pertinent to this appeal, that order included a provision that "[u]pon request of the Department, mother shall promptly submit to random testing for drugs and/or alcohol by both hair and urine; test results shall be admissible in these proceedings."

[¶4]  The Department filed a petition to terminate the parental rights of both parents on August 11, 2016.  A hearing on the petition was held on May 8 and 9, 2017.  On the morning of the first day of the hearing, the father moved to continue the hearing on the ground that he was suffering from symptoms of

withdrawal from Suboxone. He stated that the withdrawal resulted from the Department's decision to cut off payments for the Suboxone in order to force the father into releasing records documenting his substance abuse counseling. In support of the motion, the father's counsel stated that because of the withdrawal symptoms, the father was "at a little bit of a disadvantage." He later stated, "I don't believe he's incoherent, but he's saying that it has affected his ability somewhat."

[¶5]    The court summarized the positions of the parties: "The Department's saying they have an obligation . . . to make sure the person is using the medication as prescribed and is attending counseling as recommended. . . . [The father] is arguing the Department calculatedly did so to place him at a disadvantage at a time that we are on the verge of hearing." The court clarified that the Department was not withholding Suboxone but withholding payments until the father provided the Department with records showing that he had been receiving treatment.[1] The court stated, "[the father] had every reason to

---

[1] The underlying dispute between the Department and the father involved his refusal to authorize the release of medical records demonstrating his compliance with the reunification plan. Pursuant to a pretrial order, the court required all parties to "execute any releases of information forms necessary for the full exchange of information among counsel, caseworker, and the Guardian ad litem and for testimony at trial." The father argued that he was justified in refusing to provide or release the records because a Department caseworker had disclosed to his aunt that he was positive for hepatitis. The Department's position was that it was obligated to ensure that the father was in treatment before providing Suboxone. There is no evidence in the record showing when the father began to refuse to release his records, although about two weeks before trial, the Department filed a

4

understand the Department would be seeking those records and had an obligation to sign the releases in a timely fashion." It denied the motion to continue.

[¶6] The Department's first witness was a substance abuse counselor. He testified that within seventy-two hours of Suboxone withdrawal, a person is likely to experience "[h]eadaches, poor sleep, chills, sweating, diarrhea, vomiting, weakness, craving, anxiety, depression, [and] frustration." The father renewed his motion to continue. The Department objected to the motion and offered to obtain an immediate authorization for a prescription. The court once again denied the motion. The father received treatment during a break on the first day, and he testified on the following day.

[¶7] Also on the morning of the first day of the hearing, the mother objected to the admission of certain positive drug test results from a laboratory engaged by the mother's substance abuse counseling service pursuant to her reunification plan. The mother contended that the reports were inadmissible hearsay and were not covered by the admissibility provisions in the jeopardy order because they were not specifically requested by the Department.

---

motion asking the court to order the father's treatment providers to disclose records pertaining to his substance abuse treatment.

[¶8]  The court overruled the mother's objection.  It stated, "I think that clearly the spirit of the jeopardy order was . . . . tests are generated in treatment scenarios where a treatment provider requested those tests occur."

[¶9]  On June 12, 2017, the court entered a judgment terminating the parents' parental rights.  Based on the evidence presented at the hearing, the court found that both parents were (1) unwilling or unable to protect the child from jeopardy and these circumstances are unlikely to change within a time reasonably calculated to meet the child's needs, and (2) unwilling or unable to take responsibility for the child within a time that is reasonably calculated to meet the child's needs.  *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i), (ii).  The court also found that the father had failed to make a good faith effort to rehabilitate and reunify with the child.  *See id*. § 4055(1)(B)(2)(b)(iv).  The court further determined that termination of both parents' parental rights was in the child's best interest.  *See id*. § 4055(1)(B)(2)(a).

[¶10]  Both parties timely appealed.  *See* 22 M.R.S. § 4006 (2016); M.R. App. P. 2 (Tower 2016).[2]

---

[2]  The parties filed their notices of appeal prior to the September 1, 2017, effective date of the restyled Appellate Rules.  *See* M.R. App. P. 1.  Therefore, the 2016 rules apply.

## II. DISCUSSION

### A.    Evidence of Unfitness

[¶11]  The father challenges the sufficiency of the evidence supporting the court's determination that he is an unfit parent.  He does not challenge the court's finding that termination of his parental rights is in the child's best interest.[3]  *See* 22 M.R.S. § 4055 (1)(B)(2)(a).  "We review the trial court's determination of parental unfitness to see if a review of the entire record demonstrates that the trial court rationally could have found clear and convincing evidence in that record to support the necessary factual findings as to the bases for termination."  *In re Higera N.*, 2010 ME 77, ¶ 29, 2 A.3d 265.  In conducting this review, we view the facts, and the weight to be given them, through the trial court's lens.  *In re Cameron Z.*, 2016 ME 162, ¶ 16, 150 A.3d 805.

[¶12]  The court made the following factual findings concerning the father's unfitness:

> On May 20, 2015, [the father] agreed to the entry of a Jeopardy Order. . . . based on a "significant history of substance abuse, criminal conduct and incarceration." . . . [The father] had been "clean" since 2011 but had tested positive for suboxone on April 14 of 2015. . . . [The father] did not have safe and stable housing for

---

[3] Any such challenge would be futile because, in determining that termination is in the child's best interest, the court did not commit clear error or abuse its discretion. *In re Caleb M.*, 2017 ME 66, ¶ 34, 159 A.3d 345.

himself or his son. In support of reunification, [the father] was to submit to a Families Affected by Substance Abuse . . . evaluation to determine the recommended level of treatment for substance abuse, submit to random drug tests, and obtain suitable housing, among other tasks. . . .

. . . .

[By] February of 2016, . . . [the father] had done little to reunify with his son. He had not attended any of the drug screens requested by the Department. In fact, he had actually shaved his body to preclude any hair tests.

. . . .

[The father] did not enroll in [substance abuse and mental health] services until October of 2016, fifteen months after the entry of the Jeopardy Order. He has not been honest about his use and has undermined any attempt to gain a more complete picture of his activity by refusing to comply with reasonable requests for random drug testing. . . . On those occasions when he tested positive for illegal substances, [the father] offered explanations that were self serving and unreliable.

[¶13] These findings and the court's other specific findings of fact are all supported by competent evidence in the record, and the court adequately explained how the father's deficits render him unfit. *In re Logan M.*, 2017 ME 23, ¶ 3, 155 A.3d 430.[4]

---

[4] Although not challenged by the mother, the evidence also supports the court's finding of her parental unfitness by clear and convincing evidence.

8

## B.      Denial of the Motions to Continue

[¶14]  The father also contends that the court denied him due process when it denied his motions to continue the trial.[5]  *See* U.S. Const. amend. XIV, § 1; Me. Const. art. I, § 6-A.  We review a court's decision to deny a motion to continue for abuse of discretion.  *In re J.B.*, 2015 ME 25, ¶ 5, 112 A.3d 369.  When due process is implicated, we review such a procedural ruling to determine whether the process "struck a balance between competing concerns that was fundamentally fair."[6]  *In re A.M.*, 2012 ME 118, ¶ 14, 55 A.3d 463 (quotation marks omitted).  In the context of a termination hearing, balancing the interests requires "notice of the issues, an opportunity to be heard, the right to introduce

---

[5]  At trial, the father did not expressly describe this issue as one involving due process.  However, the issue is properly preserved for appeal because there was a "sufficient basis in the record" to alert the trial court to the due process issue.  *See* Alexander, *Maine Appellate Practice* § 402 at 243 (4th ed. 2013); *State v. Dolloff*, 2012 ME 130, ¶ 39 n. 11, 58 A.3d 1032.  It appears that the trial court did indeed consider the motion in terms of due process, observing that the issue was whether the father was "incapable of participating fully in a hearing regarding his child."

[6]  Although the father attempts to cast his argument wholly in terms of due process, most of his argument regarding the court's denial of his motion to continue is factual.  The court specifically found that although the father "and his counsel attempted to characterize the action as the caseworker having deprived [the father] of his medication[,] . . . it [actually] withheld payment for that medication, feeling it should not pay for it unless it could reassure itself [that the father] was engaged in treatment.  This was not an unreasonable position for the Department to maintain."  To the extent that the father's appeal is based on a challenge to this finding, we accept the finding because it is supported by competent evidence in the record.  Further, there is nothing at all in the record to support the father's characterizations that, for example, he was "incapacitated" at trial.

evidence and present witnesses, the right to respond to claims and evidence, and an impartial factfinder." *Id.* ¶ 16.

[¶15] Here, there is no question that the father had notice of the issues that would be raised at the hearing. As to the father's opportunity to be heard, he testified, presented witnesses, and involved himself in the examination and cross-examination of witnesses. Indeed, he even participated actively and meaningfully in the discussion regarding the motion to continue. To the extent that the father argues that the fact-finder was not impartial, that challenge is based entirely on the court's factual determination that the Department was "not unreasonable" when it withheld payments for Suboxone until it could verify that the father was attending substance abuse counseling. The court's factual determination on this point is supported in the record, and there is no other support for the contention that the fact-finder lacked impartiality.

[¶16] Nor does the father—who was represented by counsel throughout these proceedings, including at the hearing—explain on appeal how the court's findings would have been different had he been well. His failure to explain how his alleged incapacity prejudiced his case is relevant in determining whether he was deprived of due process. *See In re A.M.*, 2012 ME 118, ¶ 25, 55 A.3d 463.

[¶17]  There is no support for the father's contention that he was incapacitated at trial.  The father received his Suboxone treatment on the first day of trial.  He testified and participated at trial.  He has not shown how the results of the trial would have been different had a continuance been granted.  The father was not deprived of due process.  *See In re Kristy Y.*, 2000 ME 98, ¶¶ 7-8, 752 A.2d 166.  The court did not abuse its discretion in denying the father's motion to continue.

C.    Admissibility of the Mother's Drug Test Results

[¶18] Finally, the mother argues that the court erred in admitting a series of drug test results over her hearsay objection.  The Department concedes that these results would be inadmissible hearsay absent an agreement by the parties waiving any admissibility objections.  It argues that the jeopardy order, to which the parties agreed, constituted a waiver of hearsay objections regarding the drug test results.  Pursuant to the jeopardy order, "Upon request of the Department, mother shall promptly submit to random testing for drugs and/or alcohol by both hair and urine; *test results shall be admissible in these proceedings.*"

[¶19]  We review a trial court's decision to admit evidence for abuse of discretion or clear error.[7]  *State v. Hall*, 2017 ME 210, ¶ 15, --- A.3d----.  Here, the court properly relied on the earlier jeopardy order in admitting the test results.  *See United States v. Mezzanatto*, 513 U.S. 196, 202 (1995) ("[A]greements to waive hearsay objections are enforceable.").  Although there is some ambiguity in the jeopardy order, the court did not abuse its discretion when it applied the admissibility provision in the order generally to results

---

[7] The parties disagree as to the standard of review to be applied.  The mother argues that her right to due process is implicated by the court's construction of the waiver agreement and that we should review it de novo and hold that the waiver does not apply unless it is an unambiguous "knowing and voluntary" waiver of the mother's constitutional rights.  However, she did not raise this as a due process issue at trial, and there was not a "sufficient basis in the record" to alert the trial court to a due process issue. *See* Alexander, *Maine Appellate Practice* § 402 at 243 (4th ed. 2013); *Dolloff*, 2012 ME 130, ¶ 39 n. 11, 58 A.3d 1032.  Therefore, the due process issue is waived.  Nor do we find any support in the case law for the mother's contention that we should review the waiver agreement itself de novo.

On the other hand, the Department appears to contend that because a trial court has "inherent power to construe its judgment," the trial court's construction of its own order must be affirmed. This phrase is inapposite here.  The cases establishing a court's inherent power to construe its judgment generally involve a jurisdictional question regarding whether a court has authority to subsequently amend or clarify a prior order. *E.g., Boothbay Harbor Condo. I v. Whitten*, 387 A.2d 1117, 1120 (Me. 1978); *Randlett v. Randlett*, 401 A.2d 1008, 1010 (Me. 1979).  The cases do not involve questions regarding the scope of an agreement or the standard we will use in reviewing the effect of the agreement.

Because the mother's waiver does not raise constitutional issues, we review the court's decision to admit evidence pursuant to the waiver provision for an abuse of discretion. *See State v. Hall*, 2017 ME 210, ¶¶ 15, 22 --- A.3d --- (holding that review of a court's decision to admit evidence is for abuse of discretion).

12

obtained through substance abuse providers engaged by the Department as part of its reunification efforts.[8]

The entry is:

Judgment affirmed.

---

Erika S. Bristol, Esq., Auburn, for appellant father

Jack Hunt, Esq., Kennebunk, for appellant mother

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Biddeford District Court docket number PC-2015-17
FOR CLERK REFERENCE ONLY

---

[8] We also note that the mother presented no evidence challenging the accuracy or reliability of the test results that the court admitted into evidence. Further, although when the court admitted the documentary test results it left open the opportunity for the mother to secure an expert to address that evidence, the mother never did so.