2010 ME 103

**In re PRISCILLA D.**

Supreme Judicial Court of Maine.

Submitted on Briefs: July 21, 2010.

Decided: Oct. 19, 2010.

Elizabeth S. Maddaus, Esq., Dixfield, ME, for the father.

Erika S. Bristol, Esq., Auburn, ME, for the mother.

Pamela J. Ames, Esq., Waterville, ME, for the grandmother.

Panel: SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, and JABAR, JJ.

JABAR, J.

[¶ 1] At a termination of parental rights hearing, the attorney for the mother and father of Priscilla D. stipulated that the court could rely on the evidence presented in an earlier guardianship termination proceeding to make its findings regarding parental unfitness and the best interests of the child. After considering this evidence, the Kennebec County Probate Court (*Mitchell, J.*) entered a judgment terminating mother's and the father's parental rights. On appeal, the mother contends that the court violated her due process rights by accepting the stipulation.

[¶ 2] The parents raise several other challenges, mainly directed at the procedures followed in the Probate Court. The mother argues that service of the termination petition was improper and that the court erred by finding that she consented to the termination of her parental rights and by appointing the parents joint representation. The father joins the mother in contesting joint representation and asserts that there is insufficient evidence to support the court's factual findings regarding his parental unfitness. Finding no error, we affirm.

## I. BACKGROUND

[¶ 3] After the child's birth in January 2003, she and her parents went to live with her maternal grandmother. A few months later, the parents began returning to their own home intermittently, but the child frequently remained with the grandmother. In April 2005, following the mother's arrest for assaulting the grandmother, the parents permanently moved out of the

grandmother's home, taking the child with them.

[¶ 4] The grandmother filed a petition for guardianship in May 2005. The court appointed one attorney to represent both parents, and the mother and father signed a waiver of conflict dated May 24, 2005, agreeing to the joint representation. The waiver informed the parents that conflicts could arise in the joint defense of their parental rights and identified examples of such conflicts.

[¶ 5] In March 2006, the court appointed the grandmother as the child's guardian and granted the parents visitation three days a week. The parents' joint visits ended after about three weeks, both because the child was regressing and because of problems with the parents' housing. Subsequently, each parent had separate, supervised visits with the child. The mother completed approximately four visits in late 2006 before she voluntarily discontinued them due to the negative impact on the child. The father engaged in supervised visits for about six months in 2007, until the visits were terminated. The child's behavior regressed during periods of visitation and improved when visitation ended.

[¶ 6] In February 2008, the parents, who were jointly represented by the same attorney who had represented them in 2005, filed a petition to terminate the guardianship. In June 2008, before the hearing on the parents' petition to terminate the guardianship, the grandmother filed a petition for adoption and for termination of the parents' parental rights. The parents' attorney signed the acknowledgment of receipt on the parents' behalf and filed a reply. The reply did not contain an objection to the method of service of the petition, namely that it was not served on the parents directly.

[¶ 7] The court held a hearing on the petition to terminate the guardianship on May 4, 2009. Both parents testified at the hearing, as did an acquaintance of the mother, an acquaintance of the father, and the grandmother. The court also received the guardian ad litem's reports, a deposition of the child's psychologist, and the psychological evaluations of the mother and the father. The day after the hearing, the court denied the parents' petition.

[¶ 8] The court scheduled the termination of parental rights hearing for November 2, 2009. On that day, before the start of the hearing, the parties met privately with their attorneys. When they entered the courtroom, the court noted: "We had a hearing scheduled today. The Court understands that a hearing may no longer be required and ... I will allow counsel to tell me where we are." At this point, counsel for both parties reported to the court that the parents would consent to the termination of their parental rights. However, the parents declined to read their prepared consent statement to the court, so their attorney read it for them. When the attorney finished, the mother told the court that she and the father were "kinda reluctantly doing this. We know that it's in the best interest, so that's why we're doing it, but nonetheless ... we're reluctantly doing it." The mother also expressed her hope that the child would "seek [her parents] out" in the future, and that the parents and the grandmother could mend their relationship.

[¶ 9] There is no indication in the record that the parents signed the consent before the court or that the court explained the effects of a termination order, as required by 22 M.R.S. § 4055(1)(B)(1) (2009).[1] Instead, after the mother's state-

---

1. Title 22 M.R.S. § 4055(1)(B)(1) (2009)

states, in relevant part: "Consent shall be

ments, the court advised that it would need a statutory basis beyond consent in order to terminate the mother's or the father's parental rights. It asked the parties if they would "stipulate that the evidence that was submitted at the [May 2009] guardianship hearing [could] be considered at this hearing," and the parties agreed. The court then explained:

> If that evidence is—is considered by the Court, the Court can make the findings necessary under the statute and will do so. And, I also honor your consent. I understand it's reluctant ... which is why I said I—I am [going to] have a basis in the evidence for a termination. The Court can't predict what's going to happen in the future, and it cannot require reconciliation, but I do believe that, if there is [going to] be reconciliation, this is the best way to get there, so—so I—I accept what you're doing.

[¶ 10] After considering the evidence from the May 2009 hearing, the court issued a written order finding, by clear and convincing evidence, that the parents had failed to make responsible and effective attempts to establish a family relationship with their child, had not had "serious visits" with her for close to two years, and had not contributed in any significant way towards her financial support. The court granted the grandmother's petition to terminate the mother's and the father's parental rights, concluding that the parents were unwilling or unable to take responsibility for the child within a time reasonably calculated to meet her needs and that termination was in the child's best interest, in accordance with 22 M.R.S. § 4055(1)(B)(2)(a) and (b)(ii) (2009). In a separate section entitled "Other [F]indings" the court stated: "Because of the

reluctance of the parents, the Court would not proceed only on the basis of the consent."

[¶ 11] About one week after the termination of parental rights hearing, the court received letters from both parents stating that they had been coerced into consenting to a termination of their parental rights. The mother also wrote: "With the understanding that all of this has taken place, we feel we did not have the opportunity to go to court, we feel we should be able to have a hearing." Four days after the court received these letters, the parents filed a notice of appeal.

## II.  DISCUSSION

[¶ 12]  On appeal, the parents are represented by separate counsel. Between them, they challenge many aspects of the termination of parental rights proceeding. Because the record demonstrates that the court did not terminate the parents' parental rights on the basis of consent, but rather made the factual findings required pursuant to 22 M.R.S. § 4055(1)(B)(2)(a) and (b)(ii), and that the court's findings are supported by clear and convincing evidence in the record, we do not address further the arguments related to the statutory basis for termination or the sufficiency of the evidence. We will address only (A) the mother's and the father's challenge to the appointment of joint representation; (B) the mother's allegation of improper service of the termination of parental rights petition; and (C) the mother's assertion that her due process rights were violated when the court accepted her attorney's stipulation and admitted the evidence from the prior hearing.

written and voluntarily and knowingly executed in court before a judge. The judge shall

explain the effects of a termination order."

A. The Parents' Joint Representation

[¶ 13] In Maine, indigent parents in child protection cases have a right to court-appointed counsel. 22 M.R.S. § 4005(2) (2009); 18–A M.R.S. § 9–204(b) (2009); *see also Danforth v. State Dep't of Health & Welfare*, 303 A.2d 794, 801 (Me. 1973). An indigent parent is also entitled to court-appointed representation in certain guardianship proceedings, 18–A M.R.S. § 5–204(d) (2009), and in adoption proceedings, 18–A M.R.S. § 9–106 (2009). On their face, none of these statutory provisions mandate separate representation for the parents involved in these proceedings. 18–A M.R.S. §§ 5–204(d), 9–106; 22 M.R.S. § 4005(2). We have, however, recognized that the appointment of joint representation at a time when the parents have a demonstrable conflict of interest is improper. *See In re Kafia M.*, 1999 ME 195, ¶¶ 25, 28, 742 A.2d 919, 927–28.

[¶ 14] In the instant case, both parents signed a conflict of interest waiver. After signing the waiver, the parents never alerted the court that any conflict of interest had arisen. Their contentions on appeal that (1) their cases had different strengths and weaknesses, and (2) the evidence was stronger against one parent than the other, are insufficient to establish such a conflict that the court should have identified it sua sponte. There is no indication that a demonstrable conflict of interest existed between the parents during any of the Probate Court proceedings.

B. Serving the Termination Petition on the Parents' Attorney

[¶ 15] Service of process both provides adequate notice of the pendency of an action and provides the court with personal jurisdiction over properly served parties. *Gaeth v. Deacon*, 2009 ME 9, ¶ 20, 964 A.2d 621, 626. In all formal probate proceedings, service shall be made "upon all persons upon whom service is required by statute." M.R. Prob. P. 4(d)(1)(B). In termination of parental rights proceedings, "[t]he petition and the notice of hearing must be served on the parents. . . ." 22 M.R.S. § 4053 (2009).

[¶ 16] To preserve a contention of insufficient or defective service in most formal probate proceedings, it must be raised in a responsive pleading or by motion. M.R. Prob. P. 12(a)(5); *see also Moores v. Doyle*, 2003 ME 105, ¶ 7, 829 A.2d 260, 262 (applying comparable restrictions found in M.R. Civ. P. 12(b), (h)(1)). Here, the mother never objected to the sufficiency of service for the termination of parental rights petition, and she participated in the proceedings. Consequently, the mother waived the defense of insufficient service of process, and she cannot raise this argument on appeal.

C. Opportunity for a Termination of Parental Rights Hearing

[¶ 17] It is well established law that parents have a fundamental right to raise their children, *In re Robert S.*, 2009 ME 18, ¶ 13, 966 A.2d 894, 897–98, and that termination of parental rights may only be accomplished through fair procedures that are adequate to safeguard that right, *In re Matthew W.*, 2006 ME 67, ¶ 7, 903 A.2d 333, 336; *In re Randy Scott B.*, 511 A.2d 450, 452 (Me.1986). The procedures required prior to the termination of parental rights are "notice of the issues, an opportunity to be heard, the right to introduce evidence and present witnesses, the right to respond to claims and evidence, and an impartial fact-finder." *In re Robert S.*, 2009 ME 18, ¶ 14, 966 A.2d at 898 (quotation marks omitted).

[¶ 18] The mother asserts that the court's procedures deprived her of the opportunity for a hearing in violation of her due process rights. To determine whether

the procedures followed in a termination of parental rights proceeding satisfy due process, we balance three factors: the importance of the individual's interest that will be affected by the state action,[2] the potential for error through the procedures used, and the magnitude of the state's interest. *In re Randy Scott B.*, 511 A.2d at 452–53 (citing *Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).

[¶ 19] Applying these factors to the instant case, we conclude that the procedures followed by the Probate Court satisfy due process. Although the mother's right to her child is a fundamental and important one, the court's acceptance of the evidentiary stipulation does not present a risk of an erroneous deprivation of her right. The parties were present in court and had the opportunity for a termination of parental rights hearing. The court's caution regarding the proposed consent was well placed, and the process employed was a thorough and appropriate response.

[¶ 20] Moreover, when the mother's attorney stipulated that the court's judgment could be based on evidence from a

hearing six months earlier involving the same parties, the mother acquiesced in the stipulation. During the prior hearing, the mother was represented. She testified, presented evidence, and cross-examined witnesses. That hearing dealt with essentially the same issues that were relevant to the termination of parental rights proceeding. After reviewing that evidence, the court made the factual findings necessary to terminate the mother's parental rights by clear and convincing evidence. *See In re Matthew W.*, 2006 ME 67, ¶ 8, 903 A.2d at 336. Consequently, we discern no violation of the mother's due process rights in the court's consideration of the evidence from the prior proceeding upon her attorney's stipulation.

The entry is:

Judgment affirmed.

---

**2.** In this case, although a private party, rather than a state agency, initiated the termination proceeding, the entry of the official decree terminating parental rights constitutes state action. *See M.L.B. v. S.L.J.*, 519 U.S. 102, 116 n. 8, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996).