MAINE SUPREME JUDICIAL COURT                              Reporter of Decisions
Decision:      2017 ME 89
Docket:        Oxf-16-535
Submitted
  On Briefs:   April 27, 2017
Decided:       May 9, 2017

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.

## IN RE DANIEL H.

SAUFLEY, C.J.

[¶1]  The parents of Daniel H. appeal from a judgment entered in the District Court (Rumford, *Carlson, J.*) terminating their parental rights due to persistent concerns about Daniel's basic health and safety, the parents' inability to understand and respond to his needs, their history of substance abuse, the mother's serious intellectual limitations, and the father's violence toward the mother and others.  We affirm the judgment.

## I. BACKGROUND

[¶2]  The following facts are drawn from the court's findings of fact, reached by clear and convincing evidence, all of which are supported by competent evidence in the record.  *See In re Logan M.*, 2017 ME 23, ¶ 3, 155 A.3d 430.  The parents met in Michigan and moved to Maine in March 2014 at around the time the father was charged in Michigan with a felony criminal sexual conduct offense against a girl under the age of thirteen.  A warrant for

the father's arrest was issued in conjunction with the felony complaint on March 19, 2014. The mother was pregnant at the time of the move, and Daniel was born in Maine on May 27, 2014. The parents were married sometime in 2015.

[¶3] The Department of Health and Human Services was involved with the family repeatedly before petitioning for a child protection order and order of preliminary protection on August 27, 2015. The petition was based on the father's physical altercation with a neighbor while holding Daniel in his arms, the father's active arrest warrant from Michigan, and the presence of choking and other health hazards within reach of the child. The court (*Beliveau, J.*) entered an order of preliminary protection granting custody of Daniel to the Department.

[¶4] The parents waived the right to a summary preliminary hearing, and the court (*Carlson, J.*) entered a jeopardy order, with the parents' agreement, in November 2015. Jeopardy was based on the parents' inability to safely supervise Daniel, including during the mother's supervised visits with the child; their inability to keep hazardous items away from the child; allegations of the father's sexual abuse of minors; substance abuse by both parents; the father's violence toward a neighborhood cat in front of the child,

resulting in the cat being put down; and the father's altercation with his neighbor. By the time of the next judicial review in April 2016, the father was incarcerated on charges of operating under the influence, failure to submit to arrest or detention, and assault on a police officer. He was convicted of assault on an officer and OUI in May 2016 after pleading guilty to those charges.

[¶5] The Department petitioned for the termination of both parents' parental rights on July 25, 2016. After one additional judicial review, the court held a hearing on the termination petition on October 31, 2016.

[¶6] With respect to the mother's parental fitness, the court found that her parental rights to each of her four older children had been terminated, though she has little insight into why any of the children were removed from her care. Between the ages of fifteen and twenty-one, the mother was addicted to crack cocaine, and up until a week before the hearing, she had been using marijuana, without a prescription, three times per week. At the time of the termination hearing, the mother was thirty-one years old.

[¶7] Pursuant to the rehabilitation and reunification plan that the mother signed, the mother participated in a court-ordered diagnostic evaluation (CODE), which revealed an extremely low full scale intelligence

4

quotient of 56. With this very low IQ, the mother would have difficulty keeping Daniel safe without twenty-four-hour supervision in a highly structured environment. Even during supervised visits, the mother lacked focus and would often lose interest in the child halfway through her two-hour visits, appearing annoyed at the energy that it took to attend to him. She did not understand how to feed Daniel, culminating in the visit supervisor having to use the Heimlich method to prevent Daniel from choking on an overly large piece of cheese that the mother had given him. After visits with his mother, Daniel became agitated in his foster home, and he bit his foster mother's other children and the family dog.

[¶8] The mother only recently began to attend parenting education classes and did not attend nonoffender domestic violence treatment because she claims that she was not told where she had to go. Since separating from the father due to domestic violence, the mother has become engaged to another man with whom she resides. The father still visits the mother in her new residence, however, including just before the hearing.

[¶9] With respect to the parental fitness of the father, who is in his late fifties, the court found that the father lacks insight into the reasons for Daniel's removal. The father has a long history of criminal or violent

behavior: he has four prior felony convictions and served fifteen years of incarceration in Michigan; he admitted to injuring a neighborhood cat in Daniel's presence; he was convicted of assault on an officer and OUI after the Department took custody of Daniel; he has been violent toward the mother on a number of occasions; he engaged in a physical fight with his neighbor while holding Daniel; and he is currently subject to bail conditions prohibiting him from having contact with minors due to a serious charge in Michigan of sexual conduct with a child.

[¶10]  The father is not working.  He had difficulty providing a current address both when he was released from jail and at the termination hearing.

[¶11]  The father has not completed any reunification services that are included in the reunification plans that he signed.  He engaged in some substance abuse counseling but does not know the counselor's name and denies having any addictions; he attended three parenting classes and then moved to another city; he went to a mental health evaluation that he did not complete; and at the time of the mother's CODE, he was incarcerated.  No evidence was offered to show progress in any of the services that the father says he has received.  Although the father claims that the Department failed to make referrals for him, and the caseworker admittedly did not make referrals

for some of the services, the caseworker did make two or three referrals for mental health counseling and two referrals for substance abuse evaluations.

[¶12]  Based on its detailed factual findings, the court ultimately found that (1) the mother is unwilling or unable to take responsibility for the child within a time reasonably calculated to meet his needs; (2) both parents are unwilling or unable to protect the child from jeopardy, and these circumstances are unlikely to change within a time which is reasonably calculated to meet the child's needs; and (3) both parents failed to make a good-faith effort to rehabilitate and reunify with the child.  *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i), (ii), (iv) (2016); *see also* 22 M.R.S. § 4041(1-A)(B) (2016).

[¶13]  With regard to the best interest of the child, the court found that Daniel had been placed with two foster families since his removal.[1]  When he was initially placed in foster care in August 2015, he did not exhibit much emotion, but he adjusted to the home quickly.  He needs consistency, stability, and permanence, but the mother is not likely ever to have the capacity to parent him safely, and the father will not be able to have contact with him in the near future due to his pending criminal charges.  Consistent with the

---

[1] The Department's caseworker testified that Daniel is currently in a pre-adoptive placement.

recommendation of the guardian ad litem, the court found that termination of both parents' parental rights is in the child's best interest. *See* 22 M.R.S. § 4055(1)(B)(2)(a) (2016). Both parents timely appealed from the judgment. *See* 22 M.R.S. § 4006 (2016); M.R. App. P. 2.

## II. DISCUSSION

[¶14] The mother's attorney filed a brief stating that she did not believe that there was any arguable issue on appeal. The brief reports that counsel informed the mother, both in writing and personally by telephone, that counsel discerned no arguable issue and that the mother was required to file a brief opposing the termination if she believed there was a valid basis for appeal or sought new counsel. *See In re William P.*, 2001 ME 25, ¶ 3, 765 A.2d 76. Although, upon motion of the mother's counsel, we ordered an enlargement of time for the mother to file a brief, the mother did not file a brief or any other document opposing the termination or requesting other counsel. In his brief, the father challenges the sufficiency of the evidence, arguing primarily that his lack of participation in services resulted from the Department's failure to prioritize the most important of the recommended services and make referrals.

[¶15]  When a child protection proceeding has begun, the Department must produce a reunification plan identifying "the problems that present a risk of harm to the child" and "the services needed to address those problems," 22 M.R.S. § 4041(1-A)(A)(1)(a) (2016), and must "[m]ake good faith efforts to cooperate with the parent in the pursuit of the plan," 22 M.R.S. § 4041(1-A)(A)(3) (2016).  *See In re Hannah S.*, 2016 ME 32, ¶ 11, 133 A.3d 590.  "The Department's compliance with its rehabilitation and reunification duties as outlined in section 4041 does not constitute a discrete element requiring proof in termination proceedings, nor does the failure of the Department to comply with section 4041 preclude findings of parental unfitness."  *Id.* ¶ 12 (quotation marks omitted).  Instead, the court should consider the lack of reunification efforts as one of many factors in evaluating the parent's fitness.  *See id.*

[¶16]  Here, the court specifically found that the Department made repeated referrals for mental health and substance abuse counseling, but that the father became incarcerated before a CODE could be undertaken, he changed his residence, and he failed to follow through with services.  The court also specifically acknowledged that the Department made no referrals for some of the services, which demonstrates that it fully considered the

extent of the Department's compliance with its reunification duties. *See id.* ¶¶ 11-12.

[¶17] Having reviewed the record in its entirety to determine whether the evidence of parental unfitness and the child's best interest are sufficient as to each parent, we conclude that (1) competent evidence in the record supports the court's finding, by clear and convincing evidence, of one or more grounds of parental unfitness as to each parent, *see* 22 M.R.S. § 4055(1)(B)(2)(b); *In re Thomas D.*, 2004 ME 104, ¶ 21, 854 A.2d 195, and (2) the court did not commit clear error or abuse its discretion in determining that termination of each parent's parental rights is in the child's best interest, *see* 22 M.R.S. § 4055(1)(B)(2)(a); *In re Thomas H.*, 2005 ME 123, ¶¶ 16-17, 889 A.2d 297.

The entry is:

Judgment affirmed.

Taylor S. Kilgore, Esq., Taylor S. Kilgore, Attorney at Law, Turner, for appellant Mother

Daniel Dubé, Esq., Dubé & Link, P.A., Auburn, for appellant Father

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Rumford District Court docket number PC-2015-9
FOR CLERK REFERENCE ONLY