MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2018 ME 87
Docket:        Aro-18-54
Submitted
  On Briefs:   June 27, 2018
Decided:       July 3, 2018

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, HJELM, and HUMPHREY, JJ.


IN RE CHILD OF LINDSAY D.


PER CURIAM

[¶1]  Lindsay D. appeals from a judgment of the District Court (Presque Isle, *O'Mara, J.*) terminating her parental rights to her child pursuant to 22 M.R.S. § 4055(1)(A)(1)(a) and (B)(2)(a), (b)(i), (iv) (2017).[1]  In challenging the sufficiency of the evidence supporting that judgment, she specifically challenges the efforts made by the Department of Health and Human Services to rehabilitate her and reunify her with the child.  *See* 22 M.R.S. § 4041 (2017). The evidence supports the court's findings and discretionary determinations, and we affirm the judgment.

[¶2]  Based on competent evidence in the record, the court found by clear and convincing evidence that (1) the mother was unwilling or unable to protect

---

[1] On January 19, 2018, the District Court (Presque Isle, *O'Mara, J.*) entered a judgment terminating the father's parental rights to the child.  The father does not appeal from that judgment.

the child from jeopardy and that these circumstances are unlikely to change within a time which is reasonably calculated to meet her needs; (2) the mother failed to make a good faith effort to rehabilitate and reunify with the child; and (3) the termination of parental rights was in the best interest of the child. *See* 22 M.R.S § 4055(1)(B)(2). We review the factual findings for clear error and the court's ultimate conclusion that termination is in the child's best interest for an abuse of discretion. *See In re Matthew H.,* 2017 ME 151, ¶ 2, 167 A.3d 561.

[¶3]  The court based its decision to terminate parental rights on the following findings of fact:

> This proceeding is the second child protective proceeding brought by MDHHS on behalf of [the child]. [The child], currently six years old, has now been in the custody of MDHHS during this proceeding for in excess of one year.

> . . . .

> The mother has lived in shelters and has been unable to arrange for permanent housing during most of these proceedings. About four months prior to this proceeding having been begun, the mother turned primary physical residence of [the child] over to the father. Last April, the mother moved to a [new] shelter . . ., after having been asked to leave a shelter in [a different] area, which move resulted in the mother having an extended time without services and made it far more difficult, due to distance, for the mother to have in person contact with [the child]. The mother has not provided the day-to-day care for [the child] in [approximately] 13-14 months. The mother has not seen [the child] since (roughly) the first week of February, 2017, i.e. [approximately] 11 months, and she has not often requested in person contact. The mother has

not spoken to [the child] on the telephone since sometime in October. The mother admits she needs ". . . a few more months . . ." before she would be able to care for [the child]. The mother has no income, employment, vehicle, or residence (other than the shelter). The mother did not complete counseling, not having attended since October. Prior to October, her lack of regular attendance became a barrier to successful completion. [The mother has several mental health diagnoses and has had issues with substance abuse.]

. . . .

Little, if any, progress has been made by [the mother] toward ameliorating the problems that required [the child] to again be brought into care [and the mother] has [not] demonstrated the ability, skills, commitment, or desire to put [the child], her needs and her safety, first in [the mother's life]. [The mother has] voluntarily absented [herself] from [the child's] life. At this point, in what is [the child's] second child protective matter, [the mother] could [not] successfully, safely, consistently parent [the child] full time. It is unknown when, if ever, [the mother] could do so.

. . . .

[The child's] foster home has provided her with the stability, safety, consistency, love, and structure she requires and did not receive from her parents [and the child] has made considerable gains while in this home. In short, [the child's] placement in this foster home has provided her with the opportunity to grow as a child. . . . All of [the child's] needs are being met in the foster home and [the child] feels both safe and "at home."

[¶4] Given these findings of fact, which are supported by competent evidence in the record, the court did not err in its finding of parental unfitness, and the court did not abuse its discretion in determining that termination of the

4

mother's parental rights is in the child's best interest. *See* 22 M.R.S. § 4055(1)(B)(2); *In re Logan M.*, 2017 ME 23, ¶ 3, 155 A.3d 430.

[¶5] The mother contends that the court's findings are, nonetheless, unsupported by the record because the Department "did not properly attempt to rehabilitate and reunify the mother and daughter" pursuant to 22 M.R.S. § 4041. Specifically, she argues that the Department's failure to answer two scheduled phone calls from the mother prevented future contact between the mother and child.

[¶6] After a child has entered foster care, the Department and the parent have a "shared" responsibility for reunification and rehabilitation of the family. 22 M.R.S. § 4041(1-A). This shared responsibility must include the development of a reunification plan, *see id.* § 4041(1-A)(A)(1), (B)(2), and, among other statutory obligations, requires that the Department and the parent make "good faith efforts" to cooperate with one another "in the pursuit of the plan." *Id.* § 4041(1-A)(A)(3), (B)(8).

[¶7] The Department's compliance with section 4041, however, "does not constitute a discrete element requiring proof in termination proceedings." *In re Child of Heather W.*, 2018 ME 31, ¶ 11, 180 A.3d 661 (quotation marks omitted). Instead, the trial court will consider any allegations of departmental

failure or lapses in determining whether the Department has met its burden in proving parental unfitness, particularly whether the Department has proven a failure on the part of the parent to make a good faith effort to rehabilitate herself in order to reunify with the child. *See, e.g.*, *In re Child of James R.*, 2018 ME 50, ¶ 21, 182 A.3d 1252; *In re Daniel H.*, 2017 ME 89, ¶ 15, 160 A.3d 1182.

[¶8]  Contrary to the mother's contention, the evidence in the record, believed by the court, shows that the Department developed a reunification plan pursuant to section 4041 that clearly identified safety goals and services for the mother, and that the Department made good faith efforts to cooperate with the mother.  After the mother moved away from the area where the child had been placed, the Department continued to refer the mother for mental health services, hold in-person meetings with the mother, and invite the mother to participate in meetings with the child's providers by telephone.  The record also shows that, although a Department supervisor was not present to answer a scheduled phone call from the mother on one occasion, the supervisor received the mother's message and returned the phone call to the mother on that same day.

[¶9]  The record supports the court's finding, by clear and convincing evidence, of at least one ground of unfitness as to the mother and that, despite

the Department's efforts at rehabilitating and reunifying the family, the mother was still unsuccessful at reunifying with her child. *See In re Emma S.*, 2018 ME 8, ¶ 5, 177 A.3d 632.

The entry is:

Judgment affirmed.

_____

Allan Hanson, Esq., Caribou, for appellant Mother

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Presque Isle District Court docket number PC-2017-04
FOR CLERK REFERENCE ONLY