MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:      2019 ME 108
Docket:        Cum-19-67
Submitted
  On Briefs:  June 26, 2019
Decided:       July 11, 2019

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, HJELM, and HUMPHREY, JJ.

IN RE CHILD OF HALEY L.

PER CURIAM

[¶1]  Haley L. appeals from a judgment entered by the District Court (Portland, *Eggert, J.*) terminating her parental rights to her child.[1]  *See* 22 M.R.S. § 4055(1)(A)(1)(a), (B)(2)(a), (b)(i), (ii), (iv) (2018).  She argues that the court erred in finding that she had been provided proper notice of the hearing and in finding that the Department of Health and Human Services had satisfied its obligation to provide rehabilitation and reunification services, and she challenges the court's determinations of parental unfitness and the best interest of the child.  We affirm the judgment.

---

[1]  In the same judgment, the court terminated the father's parental rights.  The father does not appeal from that judgment, and the court's findings pertaining to him are not discussed in detail in this opinion.

## I. BACKGROUND

[¶2] In July 2017, the Department filed a petition for a child protection order and preliminary protection order for the child, then fourteen months old, and his two-month-old brother. The petition alleged, and the accompanying affidavit from the Department averred, that the child and his brother were at risk of physical abuse or neglect after the brother was admitted to the hospital with a life-threatening injury he sustained while in his father's care. With respect to the mother, the petition and affidavit further cited as bases for protection the mother's untreated mental health issues, her lack of follow-through with previously recommended services, and the lack of safe and stable housing for the family. The affidavit indicated that the mother, an adult, was under the guardianship of her mother due to mental health issues.

[¶3] The court (*Dobson, J.*) immediately entered an order of preliminary protection placing the children in the Department's custody. In late July 2017, the child's brother died,[2] and the court (*Powers, J.*) dismissed that child as a party later in August. Soon after the infant's death, the court (*Eggert, J.*) entered an order, after the parents waived the opportunity for a summary preliminary

---

[2] As the court (*Eggert, J.*) eventually found in the termination judgment, the cause of death was ultimately "undetermined."

hearing, maintaining the Department's custody of the child. *See* 22 M.R.S. § 4034(4) (2018).

[¶4] In November 2017, the court entered a jeopardy order with the parents' agreement. *See* 22 M.R.S. § 4035(2), (3), (4-A) (2018). Jeopardy was based on the brain injury of the brother while in the father's care, the parents' untreated mental health issues, the mother's mental breakdown and ensuing hospitalization in September 2017, the father's previous domestic violence convictions, previous child protection history regarding the child, and the parents' recognition that they could not provide a safe, stable home because they were homeless and living in a tent. The court ordered the parents to participate in mental health treatment, including any recommended medication management, and to follow treatment recommendations, establish housing suitable for reunification, participate in a court ordered diagnostic evaluation, and have contact with the child consistent with the child's best interest. The permanency plan was reunification with the parents.

[¶5] In the rehabilitation and reunification plan signed by the mother in November 2017, she agreed to address the reasons for the child's removal and to eliminate jeopardy by obtaining mental health treatment at the appropriate level of care, exhibiting sustained mental health stability, and providing a safe,

sanitary, and stable living environment. She agreed to complete outpatient mental health treatment, participate in supervised visits, submit to psychiatric medication management, and maintain secure housing. The Department agreed to ensure the provision of outpatient mental health and psychiatric treatment, a level-of-care assessment, transportation support, and supervised visitation.

[¶6] In May 2018, the Department petitioned to terminate the mother's parental rights based on her lack of consistent progress toward any of the rehabilitation and reunification goals. *See* 22 M.R.S. § 4052 (2018). The petition was served in hand on both the mother and the mother's guardian. *See* 22 M.R.S. § 4053 (2018). On May 25, 2018, the court entered an order that provided notice of a trial management conference to be held on September 4, 2018, and of a trial to be on the trailing docket that would run from September 6 to 15, 2018.

[¶7] The court sent a notice in early July 2018 stating that a hearing on termination petition would be held on September 6, 2018, and that the parties must appear "in person or by counsel." The notice did not mention the pretrial conference already scheduled for September 4, 2018.

[¶8]  The court (*Foster, J.*) held the pretrial conference on September 4, 2018, and the parents did not appear.  The court entered a judicial review and permanency planning order and order terminating the parents' parental rights. The court (*Eggert, J.*) vacated the termination judgment upon the Department's motion in November 2018 because the court's notice of the termination hearing had omitted mention of the pretrial conference and had incorrectly stated that the parents could appear at the termination hearing by counsel.[3]  In its order, the court scheduled a trial management conference for January 7, 2019.  The court order indicated that trial in the matter would be scheduled on the trailing docket of January 9 to 18, 2019.  The order explicitly provided:

> **NOTICE: If a party fails to appear at the Trial Management Conference or any subsequent hearing, an evidentiary hearing may be held in the party's absence and may result in the entry of a judgment against the absent party, including the termination of parental rights.**

Copies were sent to each parent's counsel, the Assistant Attorney General, and the guardian ad litem.

[¶9]  A pretrial conference was held as scheduled on January 7, 2019, though no pretrial order was entered.  The trial on the termination petition was

---

[3] The mother had timely appealed from the termination judgment, but she voluntarily dismissed that appeal once the trial court vacated the termination judgment.

held on January 15, 2019, with both parents in attendance. The docket entries state that the court provided notice to each party and their counsel on that day that the termination hearing was scheduled for 8:30 a.m. No written notice appears in the record.

[¶10] After hearing testimony and accepting documents in evidence, the court entered a judgment on January 22, 2019. The court made the following findings by clear and convincing evidence, and its findings are supported by competent evidence in the record. *See In re Daniel H.*, 2017 ME 89, ¶ 2, 160 A.3d 1182.

[¶11] The mother never had a mental health evaluation, but she did see a psychiatrist who conducted a medical management evaluation. His clinical impression was that the mother suffered from attention deficit hyperactivity disorder and childhood relational problems relating to her mother.[4] The psychiatrist prescribed Adderall to treat the attention deficit hyperactivity disorder, but he did not provide mental health counseling for her, and any other mental health conditions remained untreated. The court found,

> Mother has also spent part of the time since the Jeopardy Order was first entered living in a tent . . . . That living situation

---

[4]  The psychiatrist testified that he also thought that the mother may suffer from depression, post-traumatic stress disorder, and anxiety disorder. Based on this testimony, the court found that the psychiatrist's "clinical impression was that she suffered from" these disorders.

lasted up until June 2018 when she moved into a room at a friend's apartment in . . . Portland. Both living situations were within walking distance of the supervised visitation venue . . . . Despite that proximity, her attendance at scheduled visitations was inconsistent and she has not had a visit since late August 20, 2018. In addition, if reunification were going to take place in this case she needed to have progressed beyond having supervised visits once a week which was the schedule when the visits were suspended for the last time.

Mother has taken some steps to obtain a housing voucher, but has not been successful during this past year in obtaining the type of housing that would be suitable for providing an adequate living situation for her child. She is presently living at a Motel 6, which might be adequate for a short stay in transition, but not adequate as a long term option. At this time there is no long term option that Mother can reliably offer as a residence for her child.

At this point in time [the child] has been in Department custody [for] 18 months. He has been living with his foster parents . . . for over a year and is well bonded with them and their child. He is attending day care and has developed a good sense of humor. He is affectionate and smart and loves the outdoors. He is beginning to thrive in his present surroundings. He was beginning to be upset when he realized that he had to go visit his parents, although that has not been an issue for the past five months when no visits had taken place. He is in a place in his life where he now needs to have permanency.

. . . [B]ehavioral progress toward the safety goals was to be measured by having maintained secure housing, having stabilized . . . mental health, and having consistent contact with [the child] as arranged by the Department. In those regards [the mother has] failed. Mother has participated in medical management, but that addresses only a small portion of her medical health needs. Even if the [mother] could now perform better at the requirements for successful completion of the reunification plan, it would take considerable time for [her] to be successful. [The child] has been

in foster care for long enough and it is now time for him to be permanently placed. It is in his best interests for termination to take place at this time.

[¶12] Based on these findings, the court found that the Department had made reasonable efforts to rehabilitate and reunify the family, including through placement and monitoring in the licensed foster home, an attempted kinship placement, supervised visitation, referrals for mental health services, psychiatric services, transportation services, family team meetings, and case worker assistance. *See* 22 M.R.S. § 4041 (2018). The court found that, despite these services, the mother was unable to protect the child from jeopardy and these circumstances are unlikely to change within a time reasonably calculated to meet the needs of the child; that she was unable to take responsibility for the child within a time reasonably calculated to meet the needs of the child; that she had failed to make a good faith effort to rehabilitate and reunify with the child; and that termination of her parental rights is in the child's best interest. *See* 22 M.R.S. § 4055(1)(B)(2)(a), (b)(i), (ii), (iv).

[¶13] The mother timely appealed from the court's judgment. *See* 22 M.R.S. § 4006 (2018); M.R. App. P. 2A, 2B(c)(1).

## II. DISCUSSION

### A.    Finding of Proper Notice

[¶14]  The mother first challenges the court's finding that she received proper notice of the trial because there is no evidence in the record that the order supplying notice of the termination hearing was served on the mother's guardian.  This issue was never raised to the trial court, and we therefore review the issue for obvious error.  *See In re Child of James R.*, 2018 ME 50, ¶ 16, 182 A.3d 1252.

[¶15]   The child protection statutes provide that the petition for termination of parental rights "and the notice of hearing must be served on the parents and the guardian ad litem for the child at least 10 days prior to the hearing date,"[5] and that "[s]ervice must be made in accordance with the District Court Civil Rules."  22 M.R.S. § 4053.  The civil rules that apply in the District Court are the Maine Rules of Civil Procedure.  *See* M.R. Civ. P. 1.

---

[5] The mother does not argue that the November 2018 notice stating, "Trailing Docket Jan 9-Jan 18, 2019," provided insufficient notice of the January 15, 2019, trial date.  Nor did she raise such an argument at trial.  Thus, the issue has been waived.  *See In re David H.*, 2009 ME 131, ¶ 43, 985 A.2d 490.  We note that, although a specific notice of the exact date of the termination hearing would ideally have been served on counsel at least ten days before the January 15, 2019, trial date, *see* 22 M.R.S. § 4053 (2018), the November 2018 notice made it clear that the mother must attend the trial management conference and "any subsequent hearing," with the hearing to be held between January 9 and January 18, 2019.  As the mother's participation in the trial demonstrates, she was in fact aware of the trial date.

[¶16]  Rule 4 of the Maine Rules of Civil Procedure requires service of a summons, complaint, and notice regarding electronic service on both the incompetent person and the incompetent person's guardian.  *See* M.R. Civ. P. 4(d)(3).  Service of pleadings and other documents after initiation of the action is governed by M.R. Civ. P. 5, which requires, "Whenever under these rules service is required or permitted to be made upon a party represented by an attorney, the service shall be made *upon the attorney* unless service upon the party personally is ordered by the court."  M.R. Civ. P. 5(b) (emphasis added).

[¶17]  The petition to terminate the mother's parental rights initiated a new proceeding in the context of a child protection matter.  The service of the petition was, therefore, required to comport with Rule 4.  *See*, *e.g.*, *In re Child of Kaysean M.*, 2018 ME 156, ¶¶ 6-7, 197 A.3d 525 (holding that service of the termination petition by publication pursuant to M.R. Civ. P. 4(g) was adequate).  The petition here was served on the mother through in-hand service on both the mother and her guardian.  *See* 22 M.R.S. § 4053; M.R. Civ. P. 4(d)(3).

[¶18]  A subsequent notice of the scheduled time for a hearing does not, however, initiate a proceeding, and service is governed by Rule 5, which calls for service upon counsel.  *See* 22 M.R.S. § 4053; M.R. Civ. P. 5(b).  The notice of the rescheduled termination hearing was therefore also properly served on the

mother, this time through counsel. The court did not err in holding a trial and entering a judgment in this matter upon finding that service was adequate.[6]

B.    Finding of Department's Provision of Adequate Rehabilitation and Reunification Services

[¶19]  When a child protection proceeding has begun, the Department must produce a rehabilitation and reunification plan that identifies "the problems that present a risk of harm to the child" and "the services needed to address those problems," 22 M.R.S. § 4041(1-A)(A)(1)(a), and the Department must "[m]ake good faith efforts to cooperate with the parent in the pursuit of the plan," 22 M.R.S. § 4041(1-A)(A)(3). *See In re Daniel H.*, 2017 ME 89, ¶ 15, 160 A.3d 1182. We review for clear error the court's finding that the Department satisfied its statutory obligations. *See In re Child of Radience K.*, 2019 ME 73, ¶ 33, --- A.3d ---; *In re Isabelle W.*, 2017 ME 81, ¶ 8 n.3, 159 A.3d 1225.

[¶20]  Here, the evidence in the record fully supports the court's findings concerning the multiple services that the Department provided. Additionally,

---

[6] Even if service of the notice of hearing had to comply with Rule 4, however, no defect was raised to the trial court, and it is evident from the mother's attendance and presentation of witnesses that the notice provided to her counsel resulted in the mother having actual notice of the hearing. *See In re Priscilla D.*, 2010 ME 103, ¶ 16, 5 A.3d 677. She took full advantage of the opportunity to attend the trial and offer evidence. Moreover, it is not clear that service on the mother's guardian would have achieved any greater degree of notice given the mother's testimony that she and her guardian have been estranged since her guardian obtained a protection from abuse order against the mother.

there was evidence that, although the Department attempted to assist the mother in obtaining other services, the mother was difficult to reach and was not forthcoming with information, did not return calls, missed at least one opportunity to secure housing, missed family team meetings, missed visits with the child without calling visit supervisors, and refused to pursue any services that could require her to participate in psychological counseling. The court did not err, in these circumstances, in finding that the Department had complied with its statutory rehabilitation and reunification obligations.

C.    Parental Unfitness and Best Interest of the Child

[¶21]   Given the mother's lack of progress toward alleviating the identified grounds for the finding of jeopardy in this matter, the court did not err in finding three bases of unfitness—her inability to protect the child from jeopardy, with the circumstances being unlikely to change within a time reasonably calculated to meet the needs of the child; her inability to take responsibility for the child within a time reasonably calculated to meet the child's needs; and her failure to make a good faith effort to rehabilitate and reunify with the child. *See* 22 M.R.S. § 4055(1)(B)(2), (b)(i), (ii), (iv). Nor did the court err in determining that the termination of her parental rights is in the child's best interest based on his need for permanency after spending a year

and a half in foster care while the mother made so little progress toward rehabilitation and reunification. *See id.* § 4055(1)(B)(2)(a).

The entry is:

Judgment affirmed.

---

Thaddeus V. Day, Esq., Law Offices of Thaddeus V. Day, P.L.L.C., Cumberland Center, for appellant mother

Aaron M. Frey, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Portland District Court docket number PC-2017-60
FOR CLERK REFERENCE ONLY