MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2019 ME 174
Docket:        Cum-19-248
Submitted
 On Briefs:   November 21, 2019
Decided:      December 30, 2019

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, JABAR, HJELM, and HUMPHREY, JJ.

IN RE CHILDREN OF DANIELLE M.

PER CURIAM

[¶1]  Danielle M. appeals from a judgment entered by the District Court (Portland, *Eggert, J.*) terminating her parental rights to her three children, and the father appeals from a judgment entered by the court terminating his parental rights to the child they have in common, who is the youngest of the children.  *See* 22 M.R.S. § 4055(1)(B)(2)(a), (b)(i), (ii), (iv) (2018).  Each parent argues that there was insufficient evidence to support an order terminating his or her parental rights, and the father also argues that the Department of Health and Human Services did not provide appropriate and necessary reunification services.  We affirm the judgment.

## I.  BACKGROUND

[¶2]  In December 2017, the Department filed a petition for a child protection order and preliminary protection order for each of the three children, who at that time were eight, four, and two years old.  The petitions

2

alleged, and the accompanying affidavits from the Department averred, that the mother was abusing illicit drugs and alcohol and that the children were present during three different violent altercations involving the mother. With respect to the father of the youngest child, the petition and affidavit further cited as bases for a preliminary protection order a domestic violence incident during which the father pushed the mother down the stairs and strangled her with the children present, and a physical altercation between him, the mother, and the father of the oldest child involving a crowbar, during which the children were nearby.

[¶3] The court (*Powers, J.*) entered orders of preliminary protection placing the children in the Department's custody.[1] After the parents of each child waived the opportunity for a summary preliminary hearing, the court entered an order maintaining the Department's custody of each child.

[¶4] In March 2018, the court (*Eggert, J.*) entered a jeopardy order, with the parents' agreement, as to each of the three children. Jeopardy was based

[1] Originally, two separate petitions were filed because of the different parentage of the children: one petition was for the oldest child, and the other was for the two younger children. The court (*Lawrence, J.*) issued preliminary protection orders regarding the three children on December 11, 2017. However, the second petition was subsequently amended to remove the middle child, and a third petition was filed naming only the middle child and listing that child's father as unknown. The court (*Powers, J.*) issued preliminary protection orders regarding the youngest child and the middle child on December 13, 2017, based on the amended second petition and the third petition, and the Department retained custody of all three children.

on alcohol and substance abuse, mental health issues, exposure of the children to violence, and the family's prior child protective history. The court ordered the parents to participate in mental health evaluations and follow recommendations, undergo substance abuse evaluations to determine appropriate treatment, and submit to random drug testing. The permanency plan was for reunification of the children with their parents.

[¶5] In February 2019, the Department petitioned to terminate the mother's parental rights to all three children, and the father's parental rights to the youngest child,[2] based on their lack of consistent progress toward any of the rehabilitation and reunification goals.

[¶6] A hearing was held on the petitions to terminate the parents' parental rights on May 13 and 14, 2019. After hearing testimony and accepting documents in evidence, the court entered two judgments, which, in combination, terminated the parental rights of both parents to their respective children on May 23, 2019. In each judgment, the court made the following findings by clear and convincing evidence, and its findings are

---

[2] The Department also petitioned to terminate the parental rights of the father of the eldest child. However, that father later consented to the termination of his parental rights, and the termination of his parental rights is not at issue in this appeal.

4

supported by competent evidence in the record. *See In re Daniel H.*, 2017 ME

89, ¶ 2, 160 A.3d 1182.

> On December 7, 2017, Mother and the children were involved in an automobile accident as passengers and Mother had a physical altercation with the driver of the other car while the children were present. The police responded and were concerned that Mother was under the influence of alcohol. The next day [the mother and both fathers] were involved in a serious altercation . . . with a crowbar in front of the children. Again it was believed that Mother was under the influence of alcohol. [The mother and one of the fathers] were arrested and [the other father] was hospitalized. The children were safety planned and placed with a former foster parent. Criminal charges against Mother were later dismissed. Mother was ordered to participate in a substance abuse evaluation to determine appropriate treatment, and, also to participate in a mental health evaluation and follow recommendations.

> Mother's Rehabilitation Plan focused upon Mental Health treatment and Substance Abuse Treatment. There was concern about her drug and alcohol use while she was caring for the children. The goal of the substance abuse treatment was to help Mother get to a place where she could be a safe and sober caretaker for her children. Mother was to submit to drug testing upon request. Mother was also to have regular visitation with the children. Throughout this case those visits have been regularly attended and have been fully supervised. Mother's progress on her reunification plan has been irregular and other than visitation none of the steps have been completed.

> In her earlier case Mother was able to complete her reunification program and be successfully reunited with the children in about seventeen months. She knows how to do it. In this case she is now seventeen months from the date of the granting of the PPO, and little progress has been made. She has done no mental health counseling which she acknowledges she

needs for her panic anxiety and depression, but has not engaged in the counseling that would help her. She has participated in some substance abuse counseling, but not consistently with any one program to make any significant progress. She has taken only three drug screens and all were positive for a substance she should not have been using. The initial petition included concerns about her alcohol intoxication, and complaints of her alcohol use has dogged her throughout the case including as recently as April 17, 2019 when she was intoxicated at the METRO substation and creating a scene when she couldn't produce a picture i.d. for a bus pass. Again she acknowledges her need for help with her addictions, but has not completed any of the programs which may have helped her.

The Guardian *ad litem* has smelled the odor of alcohol on Mother's breath the last three times they had been in court together including on the first day of this hearing. Mother appears to be using alcohol to cope with her anxiety and that usage is continuing to the present. In addition the GAL has also learned that Mother has lost her apartment and has been homeless. She does not presently have the ability to provide safe and stable housing for [the children].

[The children] w[ere] out of her care for much of the seventeen months of the duration of her first child protection petition. [They] ha[ve] now been out of her care for another seventeen months during this petition. Contrary to the first time when she successfully went from supervised visits through the process leading up to trial placement and dismissal of the petition in seventeen months, in this petition seventeen months have elapsed and she has not progressed beyond supervised visits. Because of her behavior and reactivity to reports from the children during visits no plans have been made to progress to check in visits, never mind in home or unsupervised visits. Allowing more time to participate in the programming she should have been doing all along is not in the children's best interests.

6

[¶7] In addition to his involvement in the violent incidents described above, the court made the following specific findings pertaining to the father:

> In addition to the evaluations ordered in the Jeopardy Order [the father] was required by his reunification plan to participate in education about violence, and to participate in a mental health evaluation. He did obtain a psychosocial screening, but that is not a substitute for a mental health evaluation which would be more comprehensive and be based upon input from others. When asked about performing the reunification requirements, he responded that the assessment was enough and that he was really only a support for Mother and not interested in reunification for himself. He did attend supervised visits up until October 31, 2018 when he was arrested and charged with attempted murder and other lesser charges by indictment based upon an allegation of an attack . . . with his automobile. He remains incarcerated and his case is set for jury trial . . . . No evidence was presented during the hearing to allow the Court to make findings on the strength of the charges, but he will be incarcerated at least until after the jury trial. He has in any event expressed no interest in being involved in the reunification process.

[¶8] With respect to the two younger children, the court found,

> [They] now have a stable placement with the same family . . . . [The youngest child] has had some . . . issues being dealt with in counseling. . . . [The youngest child] is doing well and is happy and comfortable with [the] foster family. [The middle child] is . . . engaging and talkative . . . with great energy. [The child] is very bright and has superior reading skills . . . [and] is happy and comfortable in [the] foster home . . . . The foster family makes sure that both children have contact with [the oldest child].

[¶9] With respect to the oldest child, the court found,

> [The child] now has a stable placement with a family. . . . [The child] has [established a] place in the foster family with three

other [children], and has adjusted well.  [The child] is doing well in school and teachers say [the child] is a pleasure to have in class.  [The child] is participating in counseling.  [The child] says that all is well in [the] foster home.

[¶10]  Based on these findings, the court found that the Department had made reasonable efforts to rehabilitate and reunify the family, including through placement and monitoring in licensed foster homes, supervised visitation, referrals for mental health and substance abuse treatment services, family team meetings, and case worker assistance.  The court found that, despite these efforts, the parents were unable to protect the children from jeopardy and these circumstances are unlikely to change within a time reasonably calculated to meet the needs of the children; that the parents were unable to take responsibility for the children within a time reasonably calculated to meet the needs of the children; that the parents had failed to make a good faith effort to rehabilitate and reunify with the children; and that termination of the parents' parental rights is in the children's best interests.  *See* 22 M.R.S. § 4055(1)(B)(2)(a), (b)(i), (ii), (iv).  The court also found that all three children have good prospects to be adopted.

8

[¶11]	The parents timely appealed from the court's judgment.[3] *See* 22 M.R.S. § 4006 (2018); M.R. App. P. 2A, 2B.

## II.  DISCUSSION

A.	Termination of the Mother's and Father's Parental Rights

[¶12]	Both parents argue that there was insufficient evidence to support the court's judgment terminating their parental rights.  We review the court's factual findings supporting the unfitness and best interest determinations for clear error, and we review the court's ultimate conclusion that termination was in the child's best interest for an abuse of discretion, "viewing the facts, and the weight to be given them, through the trial court's lens, giving the court's judgment substantial deference."  *In re Gabriel W.*, 2017 ME 133, ¶ 2, 166 A.3d 982 (quotation marks omitted).

[¶13]  Before a court orders the termination of parental rights, it must first find by clear and convincing evidence that one of the following circumstances exists:

> **(i)** The parent is unwilling or unable to protect the child from jeopardy and these circumstances are unlikely to change within a time which is reasonably calculated to meet the child's needs;

---

[3]  On June 5, 2019, prior to filing a notice of appeal, the father moved for reconsideration and for the court to amend its findings and issue additional findings of fact and conclusions of law.  The father's motion was denied on July 1, 2019.

**(ii)** The parent has been unwilling or unable to take responsibility for the child within a time which is reasonably calculated to meet the child's needs;

**(iii)** The child has been abandoned; or

**(iv)** The parent has failed to make a good faith effort to rehabilitate and reunify with the child pursuant to section 4041.

22 M.R.S. § 4055(1)(B)(2)(b) (2018). Then, the court must determine whether there is clear and convincing evidence to support a finding that termination of parental rights is in the best interest of the child. *Id*. § 4055(1)(B)(2)(a).

[¶14] We have reviewed the record in its entirety to determine whether the evidence of parental unfitness and the children's best interests are sufficient, and we conclude that (1) competent evidence in the record supports the court's finding, by clear and convincing evidence, of one or more grounds of parental unfitness as to each parent, *see id*. § 4055(1)(B)(2)(b), and (2) the court did not commit clear error or abuse its discretion in determining that termination of each parent's parental rights is in each child's best interest, *see id*. § 4055(1)(B)(2)(a). *See In re Daniel H.*, 2017 ME 89, ¶ 17, 160 A.3d 1182.

[¶15] To the extent the father argues that the Department failed to provide appropriate and necessary reunification services, we note that "[t]he

Department's compliance with its rehabilitation and reunification duties . . . does not constitute a discrete element requiring proof in termination proceedings, nor does the failure of the Department to comply with [its duties] preclude findings of parental unfitness." *Id.* ¶ 15 (quotation marks omitted). Any lack of reunification efforts is considered as "one of many factors in evaluating the parent's fitness." *Id.*

[¶16] Although the father contends that the Department failed to perform its duties, the Department developed a rehabilitation and reunification plan for him. *Cf. In re Thomas D.*, 2004 ME 104, ¶¶ 41-42, 854 A.2d 195. There is competent evidence in the record to support the court's finding that the father was not interested in reunification for himself and was merely supporting the mother. Therefore, we cannot conclude that the Department failed to "[m]ake good faith efforts to cooperate with the parent in pursuit of the plan." 22 M.R.S. § 4041(1-A)(A)(3) (2018).

The entry is:

Judgment affirmed.

Seth Berner, Esq., Portland, for appellant mother

Matthew Govan, Esq., Govan Law Office, P.A., Portland, for appellant father

Aaron M. Frey, Attorney General, and Hunter C. Umphrey, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Portland District Court docket numbers PC-2017-84, PC-2017-85, and PC-2017-86
FOR CLERK REFERENCE ONLY